CHARLES P. VAN GRAAFIELAND and MARY H. VAN GRAAFIELAND, v. H. J. WRIGHT, VICTORIA IDA WRIGHT, H. A. MOORES and EDMUND BURKE, Appellants.

Division One, March 5, 1921.

1. **EXECUTION SALE: Setting Aside in Equity: Inadequacy of Price: Fraud.** Where a house and lot worth $20,000 are sold for $87.50 at execution sale on a mechanic's lien judgment, to the plaintiff in the execution, a sub-contractor, the inadequacy of the price is so great as to shock the conscience and constitute fraud, justifying, in connection with other facts in the case, the setting aside of the sale and cancelling the sheriff's deed in a suit by the owner, one of the execution defendants.

2. ———: ———: ———: **Proof of Fraud.** Where the inadequacy of price, for which property is sold at an execution sale, is so great as to shock the conscience, such inadequacy amounts to proof of fraud.

3. ———: ———: ———: ———: **Evidence.** In this case the evidence is examined and analyzed and upon the facts found it is *held* that there was fraudulent contrivance between the contractor and sub-contractor for the erection of the house of plaintiffs and the bonding company which made a bond to secure the performance of the contract and to protect plaintiffs from mechanic's liens, to deprive plaintiffs of their property for a grossly inadequate price, justifying the setting aside such sale, on a bill in equity for that purpose.

4. ———: **Mechanic's Lien Judgment: Duty of Sheriff.** It is the duty of the sheriff, having an execution issued on a mechanic's lien judgment against the contractor and the owner's property, to satisfy himself, by credible information or search, that no property of the judgment debtor can be found by him within his jurisdiction, before proceeding to enforce such execution by sale of the owner's property. And merely making inquiry of the execution plaintiff's attorney if he knew of any such property, and relying upon his statement that he did not, is not sufficient.

Appeal from St. Louis City Circuit Court.—*Hon. Vital W. Garesche,* Judge.

AFFIRMED.

*Clarence L. Shotwell, John V. Lee* and *Clarence T. Case* for appellants.

(1)   The petition in this case does not state a cause of action; that plaintiffs failed to plead inadequacy of price and the court erred in giving them relief on that ground.   Brown v. Chaney, 256 Mo. 219; Mangold v. Bacon, 229 Mo. 459.   (2)   The court erred in finding that the inadequacy of price was so great as to shock the conscience of the chancellor.   No such inadequacy existed in view of the fact that at the time of the sale and at the time of the trial there were deeds of trust amounting to nine thousand dollars on said property, all of which appeared of record.   Martin v. Castle, 193 Mo. 183; Sheppard v. Enright, 188 S. W. 186; Dougherty v. Gangloff, 239 Mo. 649; Walker v. Mills, 210 Mo. 684. (3)   Where gross inadequacy of price is pleaded and proven, the court may, acting with caution and only in an aggravated case, and when no aid from other equitable consideration is at hand, grant relief on the ground that the inadequacy of price raises the presumption of fraud. But this presumption does not arise where the record rebuts such presumption.   Briant v. Jackson, 99 Mo. 585. (4)   Where one is served personally with process in a suit, appears in court and contests it, knows that judgment has been rendered against him, but sits idly by, stolidly defying the law, and permits his property to be sold, or even invites such action, his plea for equitable relief should fall upon deaf ears, since the inadequacy, if any, was occasioned by his own conduct and indifference.   Brown v. Chaney, 256 Mo. 219; Briant v. Jackson, 99 Mo. 585.   (5)   Conveyances with a view to obtaining a larger price from some future purchaser show no fraud against the former owner.   Walters v. Hermann, 99 Mo. 533.   (6)   Courts cannot assume fraud nor disturb titles upon plausible conjectures.   Briant v. Jackson, 99 Mo. 585.   (7)   Purchaser at sheriff's sale takes title with general knowledge of mortgage liens,

and he is bound to assume same legal and valid. Sheppard v. Enright, 188 S. W. 186; Owsley v. Heirs of Smith, 14 Mo 153. (8) Property is not subject to division because levied on under special judgment. R. S. 1909, sec. 7752; Low v. Johnson, 102 Mo. 682; State to use v. Cave, 49 Mo. 129; Gordon v. O'Neill, 96 Mo. 350.

*Charles A. Houts* for respondents.

The setting aside of the sheriff's deed and the subsequent conveyances is abundantly justified by the following considerations: (1) The failure of the Van Graafielands to pay the lien judgment of $55.45 was due to their reliance upon the assurances given them by the bonding company, that the matter would be attended to by it (the bonding company). In cases of accident or mistake, such as this, a court of equity has the power to grant the relief to those suffering therefrom. Seamans v. Riggin, 2 N. J. Eq. 214; Howell v. Hester, 2 N. J. Eq. 266; Wetzler v. Schaumann, 24 N. J. Eq. 61; Williamson v. Dale, 3 Johns. Ch. 290; Bixley v. Meade, 18 Wend. 611; Tripp v. Cook, 26 Wend. 143; Hoppock v. Conklin, 4 Sant. Ch. 582; Griffin v. Hadley, 4 Bosw. (N. Y.) 587; Rogers v. Build. Co., 132 Mo. 442; McKee v. Logan, 82 Mo. 508; Wine Co. v. Scholer, 13 Mo. App. 435, 85 Mo. 496; Graffan v. Burgess, 117 U. S. 180; Schroeder v. Young, 161 U. S. 334; Rorer, Judicial Sales, (2 Ed.) sec. 1095. (2) The price for which the sheriff sold the property was so inadequate as to shock the moral sense and constitute a fraud upon the rights of the plaintiffs. For this reason alone courts of equity will grant relief. Mangold v. Bacon, 237 Mo. 496; State ex rel. v. Innes, 137 Mo. App. 420; Davis v. McCann, 143 Mo. 172; Donham v. Hoover, 135 Mo. 210; Rogers v. Build. Co., 132 Mo. 442. (3) Because of the inadequacy of the price bid for the property, the sheriff, who, in selling the property, was agent for both the plaintiff and the defendants in the execution, should

have declared the sale "no sale" for want of bidders, and so returned the execution. It was his duty to see that the property was not sacrificed. David v. McCann, 143 Mo. 172. (4) The property was susceptible of division and a small part thereof could have been sold for enough to satisfy defendant's judgment. The sheriff failed to examine the property to see whether it was susceptible of division, and sold it in bulk. This was contrary to the statutes, and justified the court in setting aside the sale. Sec. 226, R. S. 1909; Yeaman v. Lepp, 167 Mo. 72; State ex rel. v. Young, 61 Mo. 397.

BROWN, C.—Suit in equity to set aside sheriff's sale and deed thereunder conveying the following land in St. Louis County:

"Lot 9 of Southmoor Subdivision of St. Louis County fronting 87 feet on a private street, running thence back in a northerly direction 211.88 feet, more or less, on the east line, and 226.75 feet more or less on the west line, by 143 feet on the north line, in said Southmoor Subdivision, together with buildings and improvements located thereon."

The petition states, in substance, that the plaintiffs, husband and wife, were at all the dates mentioned, the owners of said land, which was and is of the value of twenty-five thousand dollars; that on October 25, 1916, the defendant Wright brought suit before one L. F. Matthews, a justice of the peace at Clayton, Central township in said county, against B. J. Charleville as contractor and plaintiffs as owners of said land, for fifty-five dollars and forty cents for labor and material furnished to said contractor in the construction of improvements thereon, and asking that the judgment against Charleville be declared a lien upon the land and improvements. That on December 18, 1916, the justice rendered judgment for that amount against Charleville, and, if no sufficient property of his should be found, to be levied of said land, which was charged with a lien

therefor. That a transcript of said judgment was filed in the office of the Clerk of the Circuit Court of said county, by whom an execution was issued thereon on May 9, 1917, in the statutory form prescribed in such cases. This was duly levied upon the land, which was sold thereunder on June 11, 1917, to defendant H. J. Wright, who was the only bidder, for eighty-seven dollars and fifty cents, and a sheriff's deed duly executed to him therefor. That thereafter, said Wright and wife con-veyed the same land by warranty deed reciting a con-sideration of $2,000 to defendant Moores, who, on Au-gust 9, 1917, conveyed it to defendant Burke by warranty deed reciting a consideration of $2,250. Both these deeds were promptly recorded. Neither of these grantees paid anything for the land, or claim any interest therein, and the deeds were made for the purpose of casting a cloud upon the title for the accommodation of Wright.

It also states that Charleville contracted with the plaintiffs for the erection of said improvements, for the completion of which, discharged of all liens for work and materials, he gave bond with a corporation as surety; that upon the recovery of said judgment plaintiffs im-mediately notified the surety company, which agreed to take care of it; that they were not notified, nor had they any knowledge or information of the filing of the transcript, the issue of the execution or sale of the property, and did not hear of it until demand for pos-session was made upon them by Wright after his pur-chase. That they then offered and still offer to pay him the amount of his judgment and all costs and expenses incurred in the premises which he refused and still re-fuses to accept, and, until his said transfer to Moores claimed to be the owner of the premises, and demanded possession thereof.

That Moores and Burke received the conveyances to themselves respectively with full knowledge of all the facts and for the purpose of assisting defendant Wright to defraud plaintiffs.

The prayer is that the sheriff's sale and deed thereunder, together with the deeds to Moores and Burke, be set aside, and for general relief.

*The answer of Wright* sets out his judgment and sheriff's deed substantially as stated in the petition, and admits the execution of the deeds to Moores and Burke, and says they were made "for the purpose of enabling the defendant to secure from a subsequent purchaser whatever value the defendant's equity in the property may be worth." It puts in issue the values stated in the petition, and all averments not admitted.

*Moores* and *Burke* disclaim any interest under their deeds.

The following facts appear in the record: The property in question is a lot containing something over one-half acre of ground. Mr. Charleville, as contractor, built a residence on the land for plaintiffs, for which he was to receive as the contract price $11,440, the building to be completed sometime in November, 1915. To secure the performance of this contract he gave bond in which the American Surety Company was surety, conditioned, among other things, against liens for work and materials furnished by him in its construction. In December, 1915, the building being practically completed, Mr. Charleville asked for settlement with the architect, who on examination of the building, found it deficient in several respects, including the shrinkage of the hard wood floors away from the baseboards; settlement of the foundation so as to leave a hump in the floor and defective plastering through which the laths showed, so that it could not be properly frescoed as contemplated. These things Mr. Charleville promised to complete but a settlement was not arrived at until the next spring, when Mr. Van Graafieland paid all amounts claimed from him by Charleville with the exception of the $55.40, out of which this difficulty has arisen. It is not disputed by Mr. Charleville that he owed Wright this sum, but he says that Mr. Van Graafieland, through the architect,

promised to pay it. This Mr. Van Graafieland denies. On September 14, 1916, Wright, through his attorney, notified plaintiffs of his claim, and that if the same should not be paid within ten days a lien would be filed against the building. Plaintiffs on the next day notified the surety company in writing of this, and closed as follows: "I am advising you so that you may give the matter your immediate attention."

Mr. Van Graafieland also on the same day transmitted a copy of this letter to Charleville. The suit was instituted before the justice of the peace on October 25, 1916. The plaintiffs were both present at the trial but it was taken under advisement, and judgment was not rendered until December 18, 1916. Charleville was at Arcadia, Iron County, Missouri, at the time, and entered his appearance by letter.

Mr. Van Graafieland testified that as soon as the plaintiffs learned of the judgment, he went to the office of the bonding company and told Mr. Eggers, its attorney, who said it did not amount to anything, and that they should let the bonding company take care of it, and that if anything happened, to refer it to them. They would get after Mr. Charleville, and to forget it. Mrs. Van Graafieland testifies that at about the same time she saw Mr. Myers, the manager of the St. Louis office of the bonding company, and that he told her about the same thing. Both these men were witnesses for defendants and denied these conversations.

Plaintiffs rested easy until Mr. Lee walked into Mr. Van Graafieland's office and demanded possession.

Mr. Herpel, the chief deputy sheriff of St. Louis County, to whom the special execution was delivered by Mr. Taylor, Mr. Wright's attorney, testified of the conversation accompanying the delivery: "I asked him if he knew of any property of Mr. Charleville. He said he didn't known of any, and he wanted me to execute the writ and sell the property." The deputy made no further effort in that direction and proceeded to advertise and sell as directed.

The court found that the price realized at the sheriffi's sale is so inadequate as to shock the conscience of the chancellor; that the deeds to Moores and Burke were without consideration, were made and received with full knowledge of all the facts, and for the purpose of assisting Wright to defraud the plaintiffs out of their property. It set aside the sheriff's sale, annulled the three deeds mentioned, and revested the title in plaintiffs on condition that they should pay Wright the sum total, with interest and costs added, of the amount of the judgment under which he purchased, together with any further amount laid out by him, in connection with the sheriff's sale, with interest.

The foregoing statement indicates the issues presented. The evidence will be referred to in the opinion as necessary.

I.    There are certain conceded facts which differentiate this case from the most of those to which we must look for judicial authority. The property involved is not speculative in its nature, but is the home of the plaintiffs. The debt for which it was sold does not represent a duty which the citizen owes to the government as his share of compensation for his protection in both person and property. Nor is it primarily his own debt that is involved, but a liability imposed by law as surety for the real debtor. The law, in the application of its remedies for the correction of all wrongs, seeks to adjust them to the character of the duty involved in each. Where the letter of the law is sought to be used for the infliction of an injury, its spirit frequently comes to the help of the threatened party.

*Execution Sale: Inadequate Price.*

The property involved in this controversy is an urban lot of a little more than half an acre in extent, subject to restrictive building regulations for the purpose of preserving it from unsightly surroundings. It had been purchased by plaintiffs for six thousand dollars cash, and a home built on it at a contract cost of eleven

thousand four hundred dollars, and other improvements had been made to fit it for the use. The evidence convinces us that it must have been worth, on a cost basis, twenty thousand dollars. It had been encumbered by two mortgages—one for two thousand dollars and the other for seven thousand dollars, the latter of which had been paid.

The contract price of $11,400 for the house had all been paid by the plaintiffs to Charleville, the contractor, except an order in favor of defendant Wright, a subcontractor, for the $55 which is the foundation for the judgment under which the property was sold. This the architect charged by the contract with the duty of examining and passing upon had refused to certify, and for that reason it remained unpaid.

Judgment was recovered for this amount against Charleville, the contractor, and fixing upon the property the mechanic's lien under which this sale took place, for the price of $87.50, the amount of the judgment and costs of sale.

It is the sheriff's deed made under this sale which the plaintiffs are seeking in this suit to have cancelled and set aside, and to that end are tendering in court the full amount of the judgment and costs, and expenses of the sale. The bid of defendant Wright at the sheriff's sale was the only bid made, and the trial court found that the amount "was so inadequate as to shock the judicial conscience," and set the sale aside and cancelled the sheriff's deed made thereunder on condition of payment of the judgment and costs as tendered. This appeal is the result.

There is no doubt that it would shock the sense of humanity born in every normal man to stand by and see his neighbor stripped of his home for a pittance of a fraction of one per cent of its reasonable cost to him, even if his own negligence or even stubborness had contributed to the misfortune; nor that it would shock the moral consciousness that in such a case his neighbor

had not been given the last chance to save himself from such a disaster. But the "judicial conscience" has been supposed by some to be quite a different sentiment. It has been treated as synonymous with "the letter of the law," so that all are at liberty to follow relentlessly the line of its permissive authority without turning to the right or to the left to avoid inflicting injury.

This is a mistake. Even the terms of an act of the Legislature cannot be made an instrument of fraud, but must yield to the honest purpose for which it was enacted [Lightner Mining Co. v. Lane, 161 Cal. 1. c. 698.] Neither can fraud be crystalized beyond solution in the decrees and other proceedings of courts. It was aptly said by a learned judge in Mitchell v. Kintzer, 5 Pa. St. 1. c. 217: "But in the eye of the law, fraud spoils everything it touches. The broad seal of the Commonwealth is crumbled into dust, as against the interest designed to be defrauded. Every transaction of life between individuals, in which it mingles, it corrupted by its contagion. Why then, should it find shelter in the decrees of courts?" In that case the learned judge quotes from the famous Fermer's Case, 3 Coke's Rep., part 4, p. 77, "that the law doth abhor fraud and covin, that all acts, as well *judicial* as others, and which of themselves are just and lawful, yet being mixt with fraud and deceit, are in judgment of law wrongful and unlawful; *quod alias bonum et justum est, si per vim vel fraudem petatur, malum et injustum efficitur.*"

In the Mitchell Case we find a definition of fraud in its application to transactions of this character, so terse and yet comprehensive, that we are constrained to repeat it. Says the court: "It may safely be averred, that all deceitful practices in depriving or endeavoring to deprive another of his known right by means of some artful device or plan contrary to the plain rules of common honesty, is fraud." (1. c. 219.) This is an honest definition, creditable to the law, and especially creditable to the court that embodied it in language so con-

cise, plain and practical. We should be ashamed were it otherwise.

II. That the consideration of $87.50 realized at the sheriff's sale for this property was shockingly inadequate is not denied, and the learned and comprehensive argument on behalf of the appellants is devoted to the proposition that inadequacy of price alone is not sufficient to authorize us to set aside the sale. They also refer us with confidence to the fact that the petition in this case says nothing about inadequacy of price, but simply charges that the property was worth twenty-five thousand dollars, and that it sold for eighty-seven dollars and a half. In this connection they refer us to the decision of this court in Division Two in Brown v. Chaney, 256 Mo. 219, wherein we hold that inadequacy of consideration was not sufficiently pleaded to call for the consideration of that question as an independent cause of action. It is unnecessary to refer to the facts pleaded in that case in connection with the provision of our Code of Civil Procedure (Sec. 1793) that the "forms of pleading in civil actions in courts of record, and the rules by which the sufficiency of the pleadings are to be determined, are, except as otherwise specially provided by law, prescribed by this article," and the further provision of the next following section which prescribes only a "plain and concise statement of the facts constituting a cause of action, without unnecessary repetition," and "a demand of the relief to which the plaintiff may suppose himself entitled." We see nothing in the rules of pleading prescribed by the code which seems intended to call for, or even to encourage, the statement of legal conclusions.

In this case the petition states the facts upon which the plaintiffs rely to sustain the prayer of their petition, and ask that the sheriff's sale and the deed thereunder, and the subsequent deeds mentioned in it, be set aside and cancelled as well as for general relief. In consid-

*Proof of Fraud: Pleading.*

ering the facts it presents we shall confine ourselves to the question whether, upon those facts, the sale and deeds should be set aside for fraud upon the rights of the plaintiffs.

All rules of law and equity relating to the conduct of judicial sales point to the realization, through such sale, of the fair value of the property involved as near as may be. The notice prescribed is for the purpose of attracting the attention of the public and bringing bidders to the sale, and when these things fail of accomplishment, when no bidder comes except the person by whom the proceeding has been instigated, and results in his acquisition of valuable property practically without compensation, the owner has been damaged, and thus the corner stone has been laid for legal inquiry as to the blame. The damage is the element without which there can be no inquiry and consequently no legal redress. It thus happens that inadequacy of price is always an element in cases of this character. A distinguished author states this feature of the equitable remedy sought in this case as follows: ''But although inadequacy of price will not alone be cause to set a sale aside, unless so gross as to raise a presumption of other cause, yet when inadequacy is combined with accident or appearances of fraud or unfairness, the sale will be set aside.'' [Rorer on Jud. Sales (2 Ed.), sec. 1095]. The same author in the same treatise (Sec. 1086) says: ''Ordinarily, inadequacy of price is not alone sufficient cause for setting aside an execution sale which is in other respects unobjectionable, and when the sale is made to a *bona fide* purchaser. But when the inadequacy is such as to amount to a badge of fraud, or, together with other circumstances, is such as to shock the moral sense, and particularly when surrounded by indications of hardship and unfairness, the sale will be set aside.''

Thus it will be seen that inadequacy of price is *always* an evidential feature of fraud. This thought was clearly stated by the Supreme Court of the United

States in Byers v. Surget, 60 U. S. l. c. 311, as follows: "To meet the objection made to the sale in this case, founded on the inadequacy of the price at which the land was sold, it is insisted that inadequacy of consideration, singly, cannot amount to proof of fraud. This position, however, is scarcely reconcilable with the qualification annexed to it by the court; namely, unless such inadequacy be so gross as to shock the conscience; for this qualification implies necessarily the affirmation, that if the inadequacy be of a nature so gross as to shock the conscience, it will amount to proof of fraud."

This statement of inadequacy of price so shocking to the conscience as to amount to proof of fraud was long ago adopted by this court. In Mitchell v. Jones, 50 Mo. 438, land worth $1,600 was sold at sheriff's sale for $50. No other fraud was alleged but the court set aside the sale. In Davis v. McCann, 143 Mo. 172, land worth $1,500 was sold at sheriff's sale for $6, about the same inadequacy existing in the instant case. This court set aside the sale upon bill in equity. In Guinan v. Donnell, 201 Mo. 173, we reviewed the authorities to that effect with approval. The land had been sold at about three per cent of its actual value. In this connection we said at page 202: "It would be difficult to conceive of a sale of land under execution that would be more unconscionable than the one in question. To uphold it would practically be taking the land sold under the execution from defendants, and giving it to plaintiff without the sanction of either law or equity." This cause was determined by the Court In Banc with the concurrence of all the judges.

The question of the effect of inadequacy of consideration again came before this court in banc in Mangold v. Bacon, 237 Mo. 496, upon a bill in equity to set aside a judgment for taxes and cancel the deed of the sheriff thereunder. The court, overruling its former decision in the same case reported in the 229 Mo. 459, held, or at least said, that in a case of that character inadequacy of

consideration to such an extent as to shock the moral sense might constitute good ground for setting aside the sale and cancelling the deed. In this conclusion all the judges concurred with the exception of Judges GRAVES who dissented in a vigorous separate opinion founded upon the proposition that even the general rule which makes the decisions of this court upon questions of law conclusive between the parties to the same case when again before us, is subject to exceptions in the interest of justice and preserves intact all those principles, which constitute the body of our common law and equity jurisprudence as well as the statutory enactments by which they have been supplemented or modified by legislative enactment. It then proceeds to the support of the proposition so often repeated by this and other American courts that inadequacy of consideration cannot, alone, amount to proof of fraud, by denuding it of the qualification annexed to it by the courts, "unless such inadequacy be so gross as to shock the conscience," a qualification which admits that the law is equipped with a conscience. Although, in our opinion, it has little to do with the instant case the argument has assumed it to be the key to the respondents' position, against which the attack has been principally directed. For this reason we will pause here to discuss the meaning of this clause in its application to this case, in which the absolute and shameless inadequacy is patent, and amounts to the use of legal process to take the property from the owner without compensation. This effect is not modified by the fact that the injury results from the neglect of a public duty, of the continual recurrence of which all owners have notice by law, as in Mangold v. Bacon, supra. It resulted from the use of legal process employed by an individual having complete control of it, and for whose benefit and profit it was used. The meaning as between man and man of this qualification to the rule protecting sales under judicial process from disturbance on the ground of inadequacy of price thus opens a clear field for our consideration.

III. This qualification, which as been annexed by the courts to the general rule, just stated, affords the only possible protection against fraud.

Inadequate Price: Proof of Fraud.

Statutes may be and are enacted for that purpose, but this only changes the ground of the dishonest attack. The wrongdoer is nimble and readily leaves the ground made untenable by the Legislature and seizes the reformatory measure as an instrument for his purpose. Legal process is his ultimate weapon, and courts are therefore astute to detect and prompt to correct its unconscionable use, otherwise they would become the efficient perpetrators of many wrongs.

The phase we are considering treats of inadequacy of consideration as *proof* of fraud. The extent of inadequacy which constitutes such proof is that which shocks the *conscience;* that is to say the sense of right and wrong inherent in every person by virtue of his existence as a social entity. He knows by intuition that theft and robbery are wrong, and that every act which deprives another of *his own* by deceit or stealth and without his knowledge or consent partakes of that nature. Should he find something of great value in the public road conscience would tell him, in the absence of positive law, that its appropriation by concealment would wrong whoever might be the owner, and the conscience of his neighbor would be shocked at his attempt to do so. It is this inherent sense of right and wrong to which the law refers in this instance as conscience, and the natural effect of the wrong on those sharing the same instinct is denominated a shock to that conscience. This shock is not the effect of legal advice. It is our intuitive sense of wrong, and when it follows the contemplation of all the available facts relating to an injury we can find no safer guide to its true character. Good conscience is a synonym of equity. The question here is whether this transaction by which an admitted injury has resulted to the plaintiffs, measures up to the

standard of equity and good conscience as administered by our courts. This inquiry involves an analysis of the facts.

IV.   Charleville, the contractor who built this house, claimed that plaintiffs owed him $55 on the contract

<span style="margin-left:2em">Analysis of Facts.</span> price. This the architect, who was arbiter in the matter, refused to certify, and, for that reason, the plaintiffs refused to pay it. Charleville owed defendant Wright a balance on a subcontract for painting and paid him all but $55, for which he gave him an order on plaintiffs, the owners, which the architect refused to certify. Under these circumstances the plaintiffs, as owners, by virtue of the mechanic's lien law, stood in the relation of *quasi*-sureties for the amount.   A covinous agreement was made between Charleville and defendant Wright by which the latter brought suit against plaintiffs, who did not owe him, and Charleville, who did, to enforce his lien against the property for the amount.   Charleville went to Iron County, Missouri, where he was during the pendency of the proceeding, but, to facilitate the recovery of judgment, sent to plaintiff's attorneys his written entry of appearance, which was filed with the justice and his appearance duly entered upon the docket.   Service was had upon the plaintiffs and the cause proceeded in due course and the statutory judgment (R. S. 1909, sec. 7752) was finally entered.

Mr. Charleville was a client or customer of the American Surety Company, doing business in St. Louis. All were interested in the inquiry.   The contractor and his surety had taken it up together, and why the surety should ignore the obligees of the bond for any other reason than to permit plaintiffs to sleep away their opportunity is not clear.

While there is nothing in the record to impeach directly or indirectly the truthful character of the plaintiffs, the defendant Wright impeaches himself by the confession that he falsely stated in his deed to Moores

for the purpose of deceiving a possible purchaser, that he had sold the land for $2,000. By direction of Wright's attorney Moores made the deed to Burke in which he stated that he had received a consideration of $2,250. Burke was asked by Mr. Lee to receive this deed and hold the title to the property for Wright because it was feared that Moore would turn it back to the original owners. Lee was not willing to leave such a trap set for his client, and Burke, within three days after receiving his deed, conveyed the land with warranty to Lee. This deed was not recorded, and its execution only appeared upon the trial.

The trial court undoubtedly found from the evidence as we now find that the whole matter of the enforcement of this lien was a scheme between Charleville and Wright by which the former was to obtain through this proceeding the $55 which the Van Graafielands claimed they did not owe. That for that purpose he entered his appearance in the suit in St. Louis County while he remained in Iron County so that plaintiffs were powerless to make a defense. That the plaintiffs were purposely kept in ignorance of all proceedings for the sale of the property after the rendition of the judgment, so that title might be acquired by Wright for his share in the transaction, and that Mr. Lee might receive a fee for his professional handling of the matter through the manipulation of the discredited title, and that the first intimation that plaintiffs received that the matter was not being looked after by the Bonding Company according to its promise, was the demand for possession by Mr. Lee when the process of the law had served the purpose for which it had been invoked. The plaintiffs lived upon the property and were accessible at their home. They were also accessible through the office of Mr. Van Graafieland where they communicated with him as soon as they believed him to be inextricably entangled in the net which they had woven around him. It is inconceivable that they should have disregarded the fact

that this special execution was performing its work
had they known it, and the fact that Mr. Charleville had
been advised by the surety company while it denies any
communication whatever with the obligees in their bond
indicates that the interest they took in the matter was
not in their own behalf, and combines with its improba-
bility to weaken the effect of the testimony of its agents
against the positive and unequivocal testimony of both
the plaintiffs. We are compelled to believe that their
sense of security was not madness but the result of the
promises which they detail in their testimony.

V. The conduct of the sheriff in handling this exe-
cution is deserving of notice. The judgment under which
it was issued was a statutory one (R. S. 1909, sec. 7752)
and created by its terms the *quasi*-relation of principal
and surety between Charleville and plaintiffs. It only
creates the absolute relation of judgment

Duty of
Sheriff.

debtor against the former, with a conditional
liability against the property "if sufficient
property of the debtor cannot be found to satisfy such
judgment and costs." "Cannot" is a strong word and
absolutely requires the sheriff, by credible information
or search, to satisfy himself that no property of the
judgment debtor could be found by him within his juris-
diction. This is the *very least* he could have done in
the performance of his official duty and in doing this
he was acting as agent for these plaintiffs as well as
for defendant Wright, owing a like duty to each, and
was bound to protect the interest of all parties con-
cerned. The way he performed this duty is detailed in
his own words in the evidence. Wright's attorney, Mr.
Taylor, delivered to him the execution. He testified: "I
asked him if he knew of any property of Mr. Charleville.
He said he did not know of any and he wanted me to
execute the writ and sell the property." This was all
that happened. The sheriff received no information
tending to show that Charleville had no property in the
jurisdiction. Taylor did not tell him that he had ever

given a thought to that subject. The only interpretation of which the words were susceptible was that Taylor knew nothing about it and that he wanted this property sold in any event. He kept, or at least tried to keep well within the law which denounces a lie in such cases, and at the same time to cast the whole burden upon the sheriff by the demand that this property be sold. The sheriff assumed this burden without protest, and without knowledge or information, by reciting in his deed that "no property of B. J. Charleville, was or *could be* found whereon to levy said execution." While this recital is evidence of the fact in determining the legal effect of the deed, the question now is whether it was through the procurement of Wright's attorney to secure a sale which might and did accomplish the acquisition of the property by his client without consideration. The fact of the sacrifice is admitted and the motives and conduct of the parties in bringing it about are the matters we now have under consideration. The motive which requires a falsehood express or clearly and deliberately implied is pertinent to the issue. The sale proceeded. No bidder was present unless the party who concocted it may be denominated a bidder. By way of a bid the fees and costs of those who had participated in the sale were figured and included as consideration, so that each person assisting in the transaction, including the sheriff, was paid something for his services and the title was transferred by their acts to Wright.

The sheriff, as we have said, was bound to protect the interest of all parties to the process. He was the agent of all and if his advertisement had attracted no bidder it was his business to take notice of that fact and, if honesty and fairness required it, to return the execution "no sale for want of bidders." [Davis v. McCann, 143 Mo. l. c. 178 and cases cited.] The entire proceeding had been a farce, for it is absurd to say that one charged by law with making a sale by public outcry may perform his full duty without any knowledge or

information of the property he is selling which he may communicate to the bidder. In this case there was no bidder and he should have acted accordingly.

The Davis case just cited stands upon all fours with this. In that case at page 179, we said: "While a judicial sale should be upheld when it can be done without manifest injustice to a purchaser at such sale and parties directly interested in the result thereof, the process of the court should not be used as a medium through which the property of one citizen is taken and given to another." So say we in this case. ·

VI. Before closing we desire to say that we have not determined in this case that inadequacy of consideration alone is ground for setting aside a sheriff's sale in equity. If such a case can be, where the property is of great value and the consideration simply nominal and the judgment debtor is the purchaser, we have not endeavored to consider it. We have simply devoted a few words to the disentanglement of the rule always stated by the court with its ·proviso, and to show that the form in which it has been stated by the English and American courts and law writers for ages is not an absurdity. We hold that where property is attempted to be confiscated by legal process as in this case the courts owe it to themselves to inquire with some care whether the transaction constitutes an honest attempt to collect a debt or results from a desire to wrongfully and oppressively use the process of the court to obtain the property of another without adequate consideration.

*Not Inadequate Price Alone.*

For the reasons we have stated we have in this case arrived at· the latter conclusion, and accordingly affirm the judgment of the Circuit Court of the City of St. Louis. *Small and Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur, except *Woodson, J.,* not sitting.