# VERA ROGERS v. J. FRANK DENT and GEORGE A. DENT et al., Appellants.

### Division One, March 14, 1922.

1. **TAX SALE: Suit to Set Aside: Payment of Tax Before Suit.** Where the proceedings, including the sheriff's deed, in a suit for taxes, wherein the defendants were sued by publication, were all regular and in compliance with the law, the fact that the land

Rogers v. Dent.

owner had paid the taxes before suit was brought and the collector had failed to credit such payment on the tax books was not sufficient ground to set aside the judgment and sheriff's deed as against a bona-fide purchaser at the sheriff's sale. [Distinguishing Mangold v. Bacon, 237 Mo. 496.]

2. ——: ——: **Inadequacy of Price.** In a suit to set aside a tax judgment and sheriff's deed thereunder, wherein the evidence disclosed no circumstance or appearance of fraud or unfairness in connection with the sale, tending to cause a sale at an inadequate price, the fact that forty acres of timber land, for which plaintiff had paid five hundred dollars without ever having seen it, was sold for forty-eight dollars, did not show such inadequacy of price as to shock the conscience and justify setting aside such sale, in view of the fact that the land in question and lands in the vicinity, of the same character, had practically no market value after the timber had been cut off or culled, and were being constantly sold for taxes at from fifty cents to one dollar and a half per acre.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED.

*G. C. Dalton* for appellant.

(1) A purchaser of property at an execution sale is not bound to examine into the regularity of the proceedings by which the judgment and execution thereunder were obtained, and as a rule is not affected by defects or irregularities in the proceedings not appearing of record. 17 Cyc. 1301; Thompson v. Tolmie, 2 Pet. 157; Reed v. Munn, 148 Fed. 737; 23 C. J. 739; 37 Cyc. 1485. (2) In an action to collect back taxes, the circuit court does not exercise its jurisdiction in a special or summary manner, and its judgments therein are entitled to the same presumptions as attend its ordinary judgments. Brown v. Walker, 85 Mo. 262; Allen v. McCabe, 93 Mo. 138. (3) A judgment in a tax suit cannot be set aside on proof that the taxes for the year specified in the judgment had been paid before the suit was begun. Cooper v. Gunter, 215 Mo. 558; Evarts v. Lumber Co., 193 Mo.

433. (4) In the absence of any showing of fraud or irregularity, mere inadequacy of price will not justify the court in setting aside a judicial sale. Hammond v. Scott, 12 Mo. 11; Nelson v. Brown, 23 Mo. 21; Meir v. Zelle, 31 Mo. 332; Parker v. Railroad Co., 44 Mo. 421; Wagner v. Phillips, 51 Mo. 117; Gordon v. O'Neil, 94 Mo. 355; Walker v. Mills, 210 Mo. 690; Stortz v. Voss, 205 S. W. 610; State ex rel. v. Elliott, 114 Mo. App. 562. (5) The court had jurisdiction of the subject-matter and the parties, therefore its judgment is unassailable. Shemwell v. Betts, 264 Mo. 268. (6) At the judicial sale foreclosing the state's lien for the delinquent taxes the forty acres involved in this action brought its full value. 22 C. J. 760; Railroad v. Clark, 121 Mo. 169; Martin v. Castle, 193 Mo. 195; Wagner v. Phillips, 51 Mo. 117; 2 Cooley on Taxation (3 Ed.) 959; Layton v. Trust Co., 205 Fed. 276. (7) Respondent does not allege in her bill that fraud was practiced in the very act of obtaining the judgment in the tax suit, or that she was prevented by interposition of appellants from showing, in said tax suit, the alleged payment of the taxes for the year for which the land was sold. Hamilton v. McLean, 139 Mo. 678; Christy v. Ry. Co., 214 Fed. 1020; Wolf v. Brooks, 177 S. W. 337; Railroad v. Mirrielees, 182 Mo. 141; Shemwell v. Betts, 264 Mo. 268.

*Clyde C. Cope* and *J. J. Cope* for respondent.

(1) A judicial sale of land for delinquent taxes can be defeated in a direct action for that purpose by showing that taxes were in fact paid for the year for which the land was sold. Secs. 12931, 12941, 12944, 12954, 12956, R. S. 1919; Hodge v. Hubbs, 94 Mo. 489; Harness v. Cravens, 126 Mo. 233; Kries v. Land and Lumber Co., 121 Mo. App. 184; Mangold v. Bacon, 237 Mo. 496. (2) The State has no lien under which it can sell for taxes if taxes have in fact been paid. Secs. 12928, 12929, R. S. 1919. (3) A judicial sale of land for delinquent taxes can be defeated in a direct action for that purpose by

showing that taxes were in fact paid for the year for which the land was sold and that the amount bid and paid at the sale was an inadequate price for the land. Harness v. Cravens, 126 Mo. 233; Mangold v. Bacon, 237 Mo. 496. (4) Inadequacy of consideration alone will avoid judgment. Railroad Co. v. Brown, 43 Mo. 294. (5) Respondent's petition contains all the necessary allegations, and follows the proper course under the law for obtaining relief. Yeaman v. Lepp, 167 Mo. 61; Mangold v. Bacon, 237 Mo. 496.

RAGLAND, C.—This is a bill in equity to set aside a tax judgment and a sale and conveyance of real estate made in execution thereof. The bill was filed February 6, 1920.

The petition in substance alleges: Plaintiff is, and at all times has been, a non-resident of this State; on March 26, 1912, she purchased from one Jarrell, and he conveyed to her by warranty deed which she duly recorded, forty acres of land, the southeast fourth of the southwest quarter of Section 14, Township 34, Range 4, west, in Dent County, Missouri; she paid all state and county taxes assessed against the land for the years 1912 to 1918, inclusive; she paid the taxes for year 1916, with interest, penalties and costs, on March 6, 1917, and on said date received the collector's receipt therefor; the collector failed to credit such payment on the tax books kept for that purpose, and on February 15, 1918, caused a suit to be instituted, in the Circuit Court for Dent County, by the State at his relation against plaintiff and said Jarrell, for the collection of the taxes assessed against the land for the year 1916, as though they were delinquent and unpaid; plaintiff was constructively notified of the pendency of the suit by an order of publication returnable to the April term, 1918, of said court; during that term and on April 8, 1918, judgment was rendered in favor of the plaintiff in the tax suit for the sum of $3.85, the amount of the alleged delinquent tax, penalties and costs, and foreclos-

ing the alleged lien of the State therefor; on June 7, 1918, special execution issued and the land was sold thereunder August 13, 1918, at public sale, to the defendants J. Frank Dent and George A. Dent for the sum of $48; and the sheriff who made the sale thereupon executed a deed purporting to convey the land to said purchasers. The plaintiff never knew anything about the tax suit, the judgment rendered therein or the sale of her land thereunder, until a few months before she instituted this suit.

The petition further alleges:

"That the records of said circuit court in said tax suit show on their face that all of the proceedings had in said tax suit were regular and legal and binding on all parties thereto; said records further show on their face that said judgment therein is valid and binding, and said record further show on their face that said sheriff's tax deed aforesaid is valid and binding and legal and fully and legally and completely conveys the fee simple title in and to said real estate in the said defendants, J. Frank Dent and Geo. A. Dent, but . . . that said judgment is in fact void for the reasons following:

"(a)  Plaintiff by paying to the tax collector, A. R. Stephens, on the 6th day of March, 1917, all the taxes, costs and interest which said tax collector demanded of her as being due on said real estate up to that date, extinguished any lien the State of Missouri may have had on said real estate; and at the time the tax suit hereinbefore mentioned was instituted and prosecuted and at the time the said real estate was sold to said J. Frank Dent and Geo. A. Dent there was no lien existing against said real estate whereby such real estate could have been legally and equitably sold.

"(b)  The action of said tax collector in receiving from plaintiff all the taxes, interest and costs due and unpaid and delinquent on and against said real estate and in failing, omitting and refusing to credit the tax

books and back tax books kept by him with such payment, and thereafter causing to be instituted the tax suit aforesaid, knowing as he did that all such taxes had been paid and that the lien of the State of Missouri on and against said real estate therefor had been extinguished, all constituted a fraud on this plaintiff; and his actions in prosecuting said tax suit and causing said real estate to be sold as hereinbefore set out constituted a fraud on plaintiff; and his actions in obtaining the judgment recorded as aforesaid constituted a fraud on this plaintiff; by reason of all of which this plaintiff has been divested of her record title in and to said real estate and the record title to said real estate has become vested in said J. Frank Dent and Geo. A. Dent. . . .

"That said county collector and said attorney and said sheriff prosecuted said tax suit for plaintiff in that suit and sold said real estate aforesaid knowing that all the facts stated in this petition were true and they only prosecuted same and committed the wrongful and unlawful acts and were guilty of the wrongful and unlawful commissions hereinbefore mentioned for the wrongful and unlawful purpose of obtaining for themselves certain fees and commissions which they collected by reason of their conduct in said tax suit as aforesaid. . . .

"That the reasonable cash value of the said real estate at all times hereinbefore mentioned was and is now of not less than $1000; that the defendants, J. Frank Dent and Geo. A. Dent only bid and paid at the sale held $48; that such amount is a shockingly and grossly inadequate price for said real estate and is such as to shock the conscience, and this of itself was sufficient to warn said defendants that there had been fraud in the procuration of said judgment on the part of said plaintiff in said tax suit and said county collector and said attorney, and said sheriff. . . .

"Plaintiff heretofore has offered and hereby offers to refund to the defendants J. Frank Dent and Geo. A. Dent any and all taxes by them paid on said real estate, together with all interest thereon from the date of payment of such taxes to the date of judgment in this action, as soon as the amount thereof, if any, shall be ascertained by this court."

The answer admitted that defendants owned and claimed to have title in fee simple to the land described in the petition but all other allegations therein. It also averred that defendants purchased the land in good faith without any knowledge of the facts, if such they were, alleged in plaintiff's petition, believing that they would get a good title. It set up as a further affirmative defense a judgment rendered by the Circuit Court for Dent County, December 5, 1919, in an action to quiet title brought by the defendants herein against plaintiff by which it was duly adjudged that defendants (plaintiffs therein) were the sole legal and equitable owners of said land and that the plaintiff (defendant in said suit) had no right, title, interest or estate therein, and forever quieting the title to said land in the defendants and barring and precluding the plaintiff herein from thereafter asserting any right or title thereto.

The abstract of the record shows that a reply was filed but does not set it out or indicate its nature.

Plaintiff introduced in evidence the entire record of the tax proceeding, including the judgment, the issuance and return of the special execution and the sheriff's deed to the purchasers at the sale thereunder,—all of which showed, as the petition avers, that the proceedings "were regular and legal and binding on parties thereto" and that the "sheriff's tax deed  .  .  .  fully and legally and completely conveys the fee simple title in and to said real estate to the defendants." She also introduced evidence tending to show that she paid state and county taxes against the land as alleged in her petition, through the County Treasurer of Dent County who acted as her agent. She testified that she had been living in Hiawatha,

Kansas, about twelve years; that she owned the land in controversy, but did not know where it was situated; that she paid $500 for it, but from what had been told her by others she thought it worth $1,000, the value consisting chiefly of the timber that was on it; and that she never knew anything about the tax suit or the sale of her land until some time in December, 1919.

The defendants each testified in substance that they were partners and had been engaged in buying land in Dent County at tax sales for ten years, and then owned about 25,000 acres; that the average price that they had paid for land at such sales was one dollar an acre; that the class of land to which that in controversy belonged was not worth more than fifty cents an acre when all the timber had been cut off; that the land in suit had very poor timber on it and was not worth more than one dollar an acre, but it was entirely surrounded by land already owned by them; and that at the time they bought they knew nothing about the taxes having been paid, but on the contrary supposed they were delinquent or the land would not be offered for sale. Their testimony as to the value of the land in question and similar lands in Dent County was corroborated by that of Mr. E. W. Bennett, an attorney at Salem who was also engaged in the real estate business.

Defendants also put in evidence the record in a suit to quiet title to the land in controversy, brought by them to the November term, 1919, of the Circuit Court of Dent County, in which the plaintiff in this case was made a party defendant. She was duly served by publication but did not appear or answer. All of the proceedings in that suit seem to have been regular in every respect. The petition alleged that the plaintiffs were the owners, in fee simple, of the land and asserted that title thereto and that the defendants claimed some title adverse and prejudicial to that of plaintiffs, and prayed a decree determining, defining, settling and quieting the respective rights, interests and estates of the parties plaintiffs and defendant. The judgment rendered December 5, 1919, after setting out the court's findings, recites:

"Wherefore it is considered, adjudged and decreed by the court that the title to said above described real state is vested in plaintiffs in fee simple, and that they are the absolute owners of all of said real estate; and that the defendants . . . have no right, claim, interest, estate or title whatever in or to said real estate or any part thereof, or any lien thereon; and that said defendants, and each of them, are precluded from asserting or making any claim whatever, to said real estate, or any part thereof."

In the instant case the court found the issues for plaintiff and set aside the tax judgment and the sheriff's deed made pursuant to the execution sale thereunder "on the ground that the taxes had been paid before the suit was filed and the inadequacy of the price paid when purchased at the tax sale." From such judgment the defendants prosecute this appeal.

Many questions are discussed by counsel in their briefs, but they reduce themselves essentially to these three: (1) Was the tax judgment obtained through fraud? (2) Is the plaintiff entitled to relief on the ground of inadequacy of the price paid for the land at the execution sale? and (3) Is she precluded from raising these questions by the judgment in the suit to quiet title? Of these in order.

I. With respect to the fraud charged, the facts proven were merely these: The taxes for the year 1916 were paid the county collector March 6, 1917; he failed to credit the payment on the tax books, and a year later, through his attorney, instituted and prosecuted to final judgment a suit for their collection. In due course special execution issued on the judgment; the land was sold thereunder and a sheriff's deed executed to the purchaser.

Tax Sale: Payment of Tax Before Suit. These naked facts do not give rise to the inference that the collector, his attorney and the sheriff each knew that the taxes had been paid and so knowing acted collusively in bringing and prosecuting the suit to judgment and

Rogers v. Dent.

effecting a sale of the land thereunder, in order to secure the fees and commissions incident thereto as charged in the petition. But if the evidence conclusively established that they acted with conscious knowledge of the fact that the taxes had been paid, it would show merely a fraudulent cause of action and not fraud in the procurement of the judgment, which alone would afford ground for the equitable relief here sought. [Hamilton v. McLean, 139 Mo. 678.] In this connection it is worthy of note that the chancellor who gave the judgment below set the tax judgment aside, not on the ground of its fraudulent obtention, but because "the taxes had been paid before the tax suit was filed." But if the taxes had been previously paid, that was a matter of defense that should have been interposed in the back tax suit. It afforded no ground for setting the judgment aside; courts of equity do not grant such relief for the purpose of giving the defeated party a second opportunity to be heard on the merits of case. [Shemwell v. Betts, 264 Mo. 268; McDonald v. McDaniel, 242 Mo. 172, 176; Evarts v. Lumber Company, 193 Mo. 433.] And the rule is the same whether the court acquired jurisdiction in the proceeding in which the judgment is sought to be set aside by publication, or by personal service on the defendant. In either case the judgment is unassailable by a bill in equity except for fraud in the very procurement of the judgment itself. [Shemwell v. Betts, supra.]

Had she so elected, the plaintiff in this case could no doubt have had the tax judgment set aside and secured the right to plead her defense of payment to plaintiff's cause of action in that proceeding, by filing a petition for review under the statute. [Secs. 1532, 1539, R. S. 1919.] She did not pursue this course for the reason, obviously, that the defendants' interest in the land as innocent purchasers, if such they proved to be, would not be prejudiced by the setting aside of the judgment.

Respondent seems to think that Mangold v. Bacon, 237 Mo. 496, is decisive of this case. But that case rightly understood does not contravene the rule, that the

fraud that constitutes an equitable ground for setting aside a judgment is fraud in the procurement of the judgment as distinguished from fraud in the cause of action. In the case just mentioned the landowner, after the institution of the suit for back taxes, applied to the collector for the full amount of the taxes, interest and costs, and upon being given the amount, paid it and gave the suit no further attention. Notwithstanding such payment, the collector prosecuted the suit to judgment and caused the land to be sold in execution. It was held that the payment, under the circumstances of that case, carried an implied understanding that the collector would dismiss the suit; that the defendant was thereby led to believe it unnecessary for him to appear and make a defense therein; and that the continued prosecution of the suit in violation of such understanding amounted to fraud in the concoction of the judgment. There is nothing in the facts of this case from which a similar conclusion can be drawn.

II. If the plaintiff is entitled to relief because of inadequacy of the price paid for the land, it must be on the ground of inadequacy alone, as the evidence does not disclose any circumstance or appearance of fraud or unfairness in connection with the sale tending to cause such inadequacy.

In Mangold v. Bacon, supra, it was in effect held that a court of equity would grant relief on the sole ground of inadequacy in extreme and aggravated cases, where no other avenue of relief was open. In that case an excerpt from the opinion in Guinan v. Donnell, 201 Mo. 173, is quoted approvingly and it perhaps affords as correct statement of the rule followed by this court as can be found in any of the reported cases. It is as follows: ". . . Inadequacy of price alone will not justify the setting aside of a sheriff's sale of real estate under execution, unless the price is so inadequate as to shock the moral sense and outrage the conscience. Then courts will interfere to pro-

mote the ends of justice." The instant case does not fall within that rule; on the contrary, according to the weight of the evidence, the price paid was approximately the value of the land. As alleged in the petition, the land was "wild, uncultivated, uninclosed, . . . in the actual and visible possession of no one." Plaintiff had never seen it and she was wholly unacquainted with its value or the values of similar lands in the same vicinity. In her testimony she based her estimate of its value on what others had told her, but it will be observed that she called none of those from whom she had obtained such information to the witness stand. It is true that she said she paid $500 for the land, and that is some evidence of its value. However, in her petition she alleged that she paid $500 in "cash," while in her testimony she contented herself with saying merely that she paid $500, leaving the inference that she gave in exchange something that she regarded as the equivalent of $500 in value. It is clear from the evidence as a whole that the land in question and lands of the same character in its vicinity had practically no market value after the timber on them was cut off, or culled, and that they were being constantly sold for taxes, bringing at such sale from fifty cents to one dollar and one-half per acre. As the price paid for the land in controversy was the average paid for similar lands at tax sales, it cannot be regarded, all the circumstances considered, as shockingly inadequate.

The conclusions we have reached, with respect to the validity of the tax judgment and the adequacy of the price for which the land sold, dispose of the case, and render it unnecessary to consider the effect of the judgment in the suit to quiet title. From those conclusions it follows that the judgment of the circuit court should be reversed. It is so ordered. *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by RAG-LAND, C:, is hereby adopted as the opinion of the court. All of the judges concur.