CHARLOTTE CLARK LINDSAY v. CITY OF ST. LOUIS, a Municipal Corporation, ANNE M. EVANS, HENRY ERNST and SARAH ERNST, Appellants.—139 S. W. (2d) 906.

Division Two, May 4, 1940.

*E. H. Wayman, Jno. T. Hicks,* and *Frances J. Sullivan* for City of St. Louis.

*Anne M. Evans, Newell S. Ferry, Jr.,* and *Atwood & Atwood* for Anne M. Evans, Henry Ernst and Sarah Ernst.

1144

*Hall & Todd* for respondent.

BOHLING, C.—Equity to set aside a sale made under an execution issued on a special benefit assessment judgment; to cancel the sheriff's deed made pursuant to said sale; to cancel a deed made by the execution purchaser; to cancel two deeds of trust made by the execution purchaser's grantees in connection with said purchase; to quiet title in plaintiff, and for certain additional relief contingent on the outcome of the main controversy. Decree and judgment *nisi* for plaintiff, conditioned upon plaintiff doing equity. Defendant's separate appeals are consolidated for disposition. From the view we take of the case a discussion of each of the several issues briefed is unnecessary.

In 1922 Sarah Ida Jackson was the owner of the real estate involved—a lot improved by a dwelling in the city of St. Louis and commonly known as 6900 Wise Avenue. Returnable to the December Term, 1922, of the circuit court, the city of St. Louis instituted a proceeding for certain improvements of Clayton Avenue, and the assessment of damages and special benefits ensuing therefrom. Respondent's brief, without conceding the City's lien judgment for special benefits against the real estate was binding on respondent, states that since respondent must do equity and the City has its

judgment, interest and costs and the execution purchaser has been allowed credit for the execution sale price, the issue with respect to the validity of the special assessment benefit against the real estate has become moot, and we do not detail the facts connected therewith. Mrs. Jackson and her husband conveyed said lot by warranty deed, dated June 17 and recorded June 18, 1925, to Eleanora A. Gutsch, who executed a deed of trust against the lot to secure a three-year $2500 note.

On May 5, 1925, the Commissioners appointed to ascertain the damages and special benefits in the proceedings for the improvement of Clayton Avenue filed their report, assessing a special benefit of $7.50 against said lot; and on September 21, 1925, final judgment was entered in said proceeding approving said report, and to the effect that the city of St. Louis recover $7.50, and that said sum constitute a first and special lien upon the property of Mrs. Jackson, or the owner or owners thereof, to-wit: the lot here involved.

Eleanora A. Gutsch, single and unmarried, conveyed the lot by warranty deed, dated and recorded November 9, 1925, to George M. Lindsay *"or"* Charlotte C. Lindsay, subject to general and special taxes for the year 1925 and thereafter and the aforesaid $2500 deed or trust. The Lindsays paid the $2500 indebtedness in 1927. The Lindsays later conveyed to Lena Clark, mother of Mrs. Lindsay, and on January 10, 1929, Lena Clark, by quitclaim deed, conveyed the lot to Charlotte C. Lindsay, respondent here.

Under special execution, dated August 2, 1935, issued on the aforesaid judgment for $7.50, the sheriff of the city of St. Louis, on September 14, 1935, sold the lot at public sale to Anne M. Evans, appellant, for $85, and in due course made, executed and delivered to said purchaser a sheriff's deed to said lot, which deed was dated September 30, 1935, and was recorded October 5, 1935.

On September 20, 1935, six days subsequent to said sale, Mrs. Lindsay paid delinquent taxes on the property for the years 1932, 1933 and 1934. By warranty deed dated March 7 and recorded March 9, 1936, appellant Evans conveyed the lot to appellants Henry and Sarah Ernst, husband and wife; of which transaction more hereinafter. Miss Evans then called at the office of the Burian Realty Company, which had been acting as rental agent for Mrs. Lindsay, and, according to the testimony of officers of the company, stated she had acquired the property at a sheriff's sale, presented the sheriff's deed, and wanted the company to take charge of the property and collect the rents. The Burian Realty Company thereupon notified Mrs. Lindsay and this action followed.

While appellants contend there was due service of process so as to subject the lot to the special assessment judgment, the record establishes that respondent did not have actual knowledge of the pro-

ceedings for the improvement of Clayton Avenue or of the execution sale prior to her notification by the Burian Realty Company.

The transfer of the lot to the Ernsts was effected in this manner. One J. E. Hanger executed two unsecured notes—a $3000 and a $600 note—to Mr. Ernst. Miss Evans deeded the property by warranty deed to the Ernsts, the recited consideration being $1 and other considerations. Mr. Ernst paid Miss Evans $1. She gave him the deed and he gave it back; he said for safe-keeping. He delivered to her the two notes executed by Mr. Hanger. Mr. and Mrs. Ernst executed two deeds of trust on the lot to B. Hanger, daughter of J. E. Hanger, as trustee for J. E. Hanger. One deed of trust purported to secure a principal note of $3000, payable three years after date; the other purported to secure six notes of $100 each, "due one each month." Mr. Hanger testified that when he gave Mr. Ernst his two notes Mr. Ernst gave him the two deeds of trust; that he did not see any notes secured by the deeds of trust; that he did not owe Mr. Ernst anything; that he received his information from Miss Evans; that he did not go out to inspect the property; that Miss Evans brought Mr. Ernst over; that after he found out there was going to be some trouble he got in touch with Miss Evans; that about a week or so after he received the deeds of trust he delivered them to Miss Evans and received his two notes, which he destroyed; and that he gave Miss Evans "two deeds of trust with no notes." Mrs. Ernst testified she had never seen the property; that her husband does all kinds of repair work, "an odd-job man," and earns approximately $12 a week; that Mr. Ernst expected to pay for the property out of his earnings and its rentals, and that they do not own the property they live in. Mr. Ernst testified he saw the property the day he purchased it but never inspected it; that he saw it first, he thought, in August, 1936; that he was willing to pay $3600 for it; that he bought it for speculation; that Miss Evans never delivered the warranty deed back to him or his wife; that he has had the deed continuously in his possession ever since he bought the place; that when he stated J. E. Hanger owed him $600 he misstated his testimony; and that one of the deeds of trust was for $2500 and the other was for the difference between $2500 and $3600. Miss Evans testified by deposition and in person at the trial. We take the following: After suit was instituted, she, in St. Louis County, gave the deeds of trust to a party from Wisconsin. She does not remember what she received for them. (We find no consideration for the transaction of record.) She does not remember the name of the person or whether a man or woman. "I sent it up there [meaning Wisconsin] to them." She does not know the name of the town. At the time of the trial she held the deeds of trust as attorney. They were not her property. She still had an interest in "it." She could not tell to whom she was looking for payment of her interest in the Evans-Han-

ger-Ernst transaction. There may be other testimony of record upon which to base a finding that said transaction was a scheme to cloud the title; but the foregoing sustains the chancellor's finding that the Ernsts and the Hangers acted as "straw parties"; that as between them and Miss Evans, Miss Evans had the sole beneficial claim to the lot, and that she likewise held the deeds of trust.

Of the execution sale price and incidental matters. The chancellor *nisi* found the lot worth $5000. Experienced realtors valued the property, as of the execution sale date, at between $4000 and $5000. Appellant Evans considered the property worth $3600, the purported sale price to the Ernsts. A finding that the execution sale price of $85 was approximately two per cent of the value of the property sold is well within the record made.

In Ellis v. Powell (Mo.), 117 S. W. (2d) 225, 226[2] land considered worth $300 was sold for $8.50 under a judgment for $68.54 taxes and $27.90 costs. In sustaining a decree setting aside the deed, GANTT, J., said: "In other words, the lot was sold for less than three per cent of said value. Thus it appears that the consideration of $8.50 is so grossly inadequate as to amount, in itself, to a fraud in law."

Miss Evans' bid of $85 covered the judgment, interest and costs. Appellants say there is no Missouri case on motion or in equity setting aside an execution sale solely on the inadequacy of consideration where the bid covered the tax judgment, interest and costs. This may be. They rely upon Mangold v. Bacon, a case before court en banc on three occasions (229 Mo. 459, 130 S. W. 23; 237 Mo. 496, 141 S. W. 650; 249 Mo. 48, 155 S. W. 393) and involving a judgment of $14.99 for taxes, etc., and the sale of land worth $1000 to $1200 for $12.50, and other equities. They direct our attention to portions of the opinions of the late lamented Judge LAMM on the first and the second appeal wherein he stresses the fact that the consideration was insufficient to pay the taxes or the costs (237 Mo. l. c. 520, 521, 523, 524, 141 S. W. l. c. 656, 657, 658; 229 Mo. l. c. 491, 492, 494, 130 S. W. l. c. 33, 34). It is not a matter of amazement that so cautious a judge, in meeting the contention that there was no precedent by the statement: "Be it so. But if there be none it is time to make one" (229 Mo. l. c. 492), should expressly limit his discussion, as in many other instances, to the particular facts involved. This is especially apropos of a cause in equity, wherein the proper exercise of a passion to administer justice not afforded at law permits the chancellor to consider, relaxed from the rigid rules of law, the kernel rather than the legal shell of the particular controversy. Appellants' position involves a *non sequitur*. There is no such affinity between the amount of a tax judgment, interest and costs and the worth of the property subject thereto upon execution as to necessarily constitute the one a criterion for the other. The

fact that the execution purchase price is less than the tax judgment, interest and costs may tend to establish a fraud upon the State or one of its subdivisions. If so, it becomes a supporting and additional rather than an essential probative factor establishing the necessary inadequacy of consideration to invalidate the sale.

Mangold v. Bacon, 237 Mo. l. c. 522, 144 S. W. l. c. 657 (quoting Guinan v. Donnell (Banc), 201 Mo. 173, 202, 98 S. W. 478, 484, and citing authority), states the rule, with its qualification: " 'It has always been held by this court that inadequacy of price alone will not justify the setting aside of a sheriff's sale of real estate under execution, *unless the price is so inadequate as to shock the moral sense and outrage the conscience. The courts will interfere to promote the ends of justice'* "; and applied the qualification to the facts there involved. This is developed *arguendo,* and not repeated here, with respect to Missouri authorities in Van Graafieland v. Wright, 286 Mo. 414, 425, 228 S. W. 465, 468[3, 4]. That case, although not passing off on the inadequacy of the consideration at the execution sale, involved a sale for $87.50, the amount of the judgment and costs of sale; but the observations there made with respect to the inadequacy of the consideration have been cited with approval in subsequent cases. State ex rel. v. Elliott, 114 Mo. App. 562, 566, 90 S. W. 122, 123, states, absent a right to redeem, "courts will apply the same rule to tax sales as applied to sales under ordinary judgments." The instant case does not involve a judgment for general taxes. Consult, also, Hannibal & St. J. Rd. Co. v. Brown, 43 Mo. 294, 297; Mitchell v. Jones, 50 Mo. 438; Davis v. McCann, 143 Mo. 172, 177, 44 S. W. 795, 796; Siela v. Kneib (Mo.), 176 S. W. 1052, 1054[1]; State ex rel. v. Nathan (Mo.), 229 S. W. 176, 177[2].

Of other cases stressed by appellants: In Uhrig v. Hill-Behan Lumber Co., 341 Mo. 851, 860, 110 S. W. (2d) 412, 417, the argument was that "the low price," coupled with other alleged factors, should shock the conscience of the court; plaintiffs stating "the sale price 'is admittedly not so inadequate as to justify the setting aside of the sale' on that ground alone." In Rogers v. Dent, 292 Mo. 576, 583, 586(II), 239 S. W. 1074, 1075, 1077[5], the weight, in fact practically the only testimony of probative value, established that the 40 acres, which sold for $48, was worth $1 an acre.

The execution deputy sheriff testified three sales were conducted on September 14, 1935, and resulted in prices of between $84 and $123. This, the *average price,* does not establish any relation between the price and the worth of any given property. A material factor—the worth of the property—on the issue of inadequacy of price is lacking. Furthermore, two or more unconnected wrongs do not justify any one or all of said wrongs. Appellants' contention in this respect is denied.

Courts have been circumspect in their language respecting the

effect of an inadequacy of consideration upon execution and judicial sales; but, as stated by GOODE, J., in the early case of State ex rel. v. Innes (1909), 137 Mo. App. 420, 425, 118 S. W. 1168, 1169, "their bark is worse than their bite" and they have diligently searched for and nearly always found some circumstance to save their face while preventing confiscation. So, in the instant case: The sale was made at the September Term, 1935, of court; and respondent, during the pendency of said term, had a remedy by motion to seek to vacate the sale. [City of St. Louis v. Miller, 336 Mo. 1122, 82 S. W. (2d) 579, and cases there cited. See also, State ex rel. v. Davidson, 315 Mo. 549, 286 S. W. 355; State ex rel. v. Sanders, 326 Mo. 76, 30 S. W. (2d) 986.] (Appellant Evans was an interested party in St. Louis v. Miller, supra.) She viewed the property the day after the sale and recorded her deed October 5, 1935; but took no further step to assert ownership until the consummation of her transaction with the Ernsts. The trial court found Miss Evans knew respondent had no actual knowledge her property had been sold and that Miss Evans' delay in asserting ownership was for the purpose of depriving respondent of her remedy at law by motion. This, as well as the fact that Miss Evans was of opinion such a motion would result in setting the sale aside, is fully supported by the record. She testified that on account of her experience in St. Louis v. Miller she *purposely* waited until the expiration of the September Term, 1935, of court before actually making known her ownership to parties adversely interested. She permitted Mrs. Lindsay to collect the rents for the months of October, November, December, 1935, and January and February, 1936. This was not in the usual and ordinary course of business. The recording of the sheriff's deed was ineffective to destroy respondent's right to relief by timely motion. [Consult State ex rel. v. Wessell, 237 Mo. 593, 610(III), 141 S. W. 883, 888[4].]

Other matters are presented by respondent to sustain the judgment *nisi*. It would serve no useful purpose to discuss them. We therefore, for instance, overrule respondent's motion to dismiss the appeal of appellants Evans and Henry and Sarah Ernsts.

The judgment is affirmed and the cause is remanded with directions to modify the decree *nisi* and base the relief granted respondent upon the issue of inadequacy of price and the actions of defendants Evans, Hanger, and the Ernsts as herein discussed. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.