BUSSEN REALTY COMPANY, a Corporation, Appellant, v. WILLIS W. BENSON ET AL.—159 S. W. (2d) 813.

Court en Banc, March 10, 1942.

*Grimm, Mueller & Roberts* for appellant.

*John A. Nolan, Wm. H. Tombrink* and *Joseph C. Schroeder* for respondent.

██ DOUGLAS, J.—The plaintiff corporation, a company to hold the real estate belonging to the Bussen family, has sued in equity to set aside a tax sale of a parcel of its real estate situated in St. Louis County and to enjoin the collector from delivering a deed for such parcel to the purchaser at such sale.

The land in question was quit claimed to plaintiff in 1931. The 1929 taxes had not been paid. In November, 1934, the collector, for a consideration of $11, sold the land because of such unpaid 1929 taxes, then delinquent in the amount of $10.59, and issued the usual tax sale certificate to the purchaser. The land comprised seven and a fraction acres, unimproved but suitable for subdivision. The petition alleges its reasonable value to be $2000; the evidence showed its value to be as high as $4500. The land was not redeemed within the two-year period of redemption. However, no deed was executed by the collector to the purchaser because of the threat of this suit and its subsequent institution.

There is no question about the regularity of the proceedings; it is agreed that the statutes were followed in every respect. The court below dismissed plaintiff's petition and it has appealed.

The land was sold under the provisions of the Jones-Munger tax law which law was then applicable to St. Louis County. [Laws 1933, pp. 425-449, Sec. 11117 et seq., R. S. 1939.] This law adopted in 1933 replaced the law relating to delinquent taxes which had been in effect since 1877. [Laws 1877, p. 384.]

██ The one and only question presented and for decision is whether relief should be granted solely because of the inadequate consideration. The amount was less than one per cent of the lowest value placed on the real estate. Under our decisions involving the then existing tax laws, this amount is so grossly inadequate as of itself alone to amount to fraud. But in view of the changes brought about by the Jones-Munger law should we now set aside a tax sale on the sole ground of the inadequacy of the consideration? Is such a reason still applicable?

██ Let us first review the development of this rule in tax cases. Tax sales have always been carefully scrutinized by this court. More than one hundred years ago this court said a tax sale belonged with those proceedings which are summary and *ex parte* and that it "is against common right and against the law." It pointed out that tax sales must be "strictly pursued and also strictly proved" because otherwise a man may be deprived of his property contrary to the constitution. [Morton v. Reeds, 6 Mo. 64.]

Later, in another appeal of the same case, we first touched on the element of inadequacy of consideration at a tax sale. The tax law

then was somewhat similar to the present Jones-Munger law. It provided for a sale by the collector who issued a certificate to the purchaser. During the two years following the sale the owner could redeem but if he failed to do so then the collector deeded the property to the holder of the certificate. In that case the holder failed to record his certificate within the proper time. This court held such failure made the proceeding void. It refused to discuss its reasons, saying: "He who wishes to obtain an estate worth thousands, for less than ten dollars, under and by virtue of the law, is not to be permitted to ask why he should be required to do this or to do that. It is an answer, that it is required by law. *Ita lex scripta est.* He claims by the law, then by that law let his pretensions be judged." [Reeds v. Morton, 9 Mo. 877.]

In cases involving judicial sales in the usual civil cases this court at first refused to upset such sales on the ground of inadequacy of price alone. But later on we made an exception where we found the inadequacy to be gross and shocking. We said in Phillips v. Stewart, 59 Mo. 491: "It is well settled that inadequacy of price, unaccompanied with fraud or unfair dealing, is not a distinct ground for relief in equity jurisprudence. There are sometimes cases of such unconscionableness or inadequacy in a bargain, that they demonstrate some gross imposition or some undue influence, and there the interference is placed upon the satisfactory ground of fraud. . . . But where the sale is open and unaffected, the rule undoubtedly is, that ▮▮▮ mere inadequacy is not sufficient, *unless it be so gross as of itself to prove fraud or imposition on the part of the purchaser."* (Our italics.)

The tax laws in the meantime had been changed. In 1877 the provision for summary tax proceedings were repealed and the regular course of civil procedure was followed in foreclosing the tax lien. There was provided a suit for taxes, judgment and sale by the sheriff under execution as in other civil suits.

Thereafter, in a suit to set aside the tax sale, we said: "Mere inadequacy of price is insufficient to set aside a judicial sale. There must be some fraud in the transaction as a general rule, where the sale is open and no improper practices are shown on the part of the purchaser, unless the inadequacy is so gross as *per se* to amount to prove fraud in one of its numerous manifestations on the part of the purchaser." [Walters v. Hermann, 99 Mo. 529, 12 S. W. 890.]

A few years later in a suit to set aside an execution sale and deed on a judgment on a note and for foreclosure of a mortgage, this court held: "Inadequacy of price alone will not justify the setting aside of a sheriff's sale of real estate under execution, unless the price is so inadequate as to shock the moral sense and outrage the conscience. Then courts will interfere to promote the ends of justice. (Citing cases.) In the case at bar land worth at least $25 per acre was

sold for about fifteen cents per acre. It would be difficult to conceive of a sale of land that would be more unconscionable than the one in question. To permit the sale to stand under the circumstances would be but little better than taking the property of one person and giving it to another, which the law does not now nor ever did permit." [Davis v. McCann, 143 Mo. 172, 44 S. W. 795 (1898).]

This court was not bold, however, in applying this rule and such was especially true in tax cases. Wherever it could couple a grossly inadequate consideration with some irregularity in the proceedings, no matter how minor, it would do so. This led Judge GOODE, then of the St. Louis Court of Appeals, in a suit to set aside a sale for taxes to observe that although the courts have announced on numberless occasions that they would not vacate a sheriff's sale because of inadequacy of price, "the judgments actually pronounced by them show their bark is worse than their bite." The statement that sales would not be cancelled for inadequacy alone became only "a half truth." "When the inadequacy of the bid was very great, some circumstance of irregularity, mistake, fraud or injustice was searched for diligently and nearly always found, which enabled the court to save its face while preventing confiscation." And so Judge GOODE, too, found additional facts besides the inadequate bid and concluded: "We will follow the fashion of other courts in similar cases, and refrain from resting our decision in favor of appellant on the single circumstance that the property was sacrificed." [State ex rel. Hartley v. Innes, 137 Mo. App. 420, 118 S. W. 1168 (1909).]

In 1911 we decided the case of Mangold v. Bacon, 237 Mo. 496, 141 S. W. 650, a suit to cancel a tax deed. Judge LAMM there held that where the inadequacy of consideration was "so gross as to shock the conscience" it constituted by itself a sufficient ground to set aside the sheriff's deed. He said: "We think the conservative and better doctrine is that a court of equity in Missouri, acting with caution and only in an aggravated case and when no aid from other equitable considerations is at hand, may set aside a sheriff's deed on the sole ground of a consideration so grossly inadequate as to shock the conscience.

"That inadequacy of consideration is not treated in books on equity as a distinct head of equitable relief, but under the head of fraud, is nothing to the point. The mere *name* amounts to nothing. If the inadequacy is so inflamed under all the facts as to spell fraud, then we have two things, each the equivalent of the other, viz., fraud and inadequacy."

Judge LAMM later continues: "Nor is it conclusive that cases may be found that apparently repudiate the exception [where the price is so inadequate as to shock the conscience]. Of them it may be said that, if we have ever departed from the exceptions to the rule, we have always come back to the broad doctrine sooner or later."

64

And so this court came to apply the same rule to judicial sales in tax suits as was applied to judicial sales in other suits and to make no exception in tax suits even though the public good demanded the collection of taxes.

In the recent case of Ellis v. Powell (Mo.), 117 S. W. (2d) 225, a suit where the property was sold for taxes at an amount stated to be less than three per cent of its value, Judge GANTT approved the Mangold case. He said: "It is the general rule that a sheriff's sale of real estate under execution will not be set aside on mere inadequacy of consideration. However, an exception to said rule is stated by a standard text as follows: 'Inadequacy of consideration, if it be so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for cancelling a transaction. In such cases the relief is granted, not on the ground of inadequacy of consideration, but on the ground of fraud as evidenced thereby.' [Kerr on Fraud and Mistake, 161, citing many authorities.]

"In substance, we so ruled in Mangold v. Bacon, 237 Mo. 496, 522, 141 S. W. 650; Guinan v. Donnell, 201 Mo. 173, 202, 98 S. W. 478; Dougherty v. Gangloff, 239 Mo. 649, 661, 144 S. W. 434; Van Graafieland v. Wright, 286 Mo. 414, 428, 228 S. W. 465."

Thus, over the years this court has developed the rule (which we refer to hereinafter merely as "the rule") that a consideration paid at a tax sale (in almost every instance a judicial sale) which is so grossly inadequate as to shock the conscience, by itself establishes fraud. Perhaps it was following the principle announced by Lord HARDWICKE, one of the earliest pioneers in developing the field of equity, which was: "Fraud is infinite, and were a court of equity once to lay down rules, how far they would go, and no further, in extending their relief against it, or to define strictly the species or evidence of it, the jurisdiction would be cramped and perpetually eluded by new schemes which the fertility of man's invention would contrive." [See Equity, 10 R. C. L., sec. 64.] Courts of equity have refused to permit a person to take an unconscionable advantage of another. Relief has been given when one's necessity or weakness has offered the opportunity for such an advantage. On the general subject of gross inadequacy amounting to fraud, see Pomeroy Eq. Jur. (1941), sec. 927.

We find no other expressed reason for this court's application of the rule to tax cases than its refusal to permit property to be so sacrificed as to amount to confiscation.

 It is said that Missouri is unique in applying the rule to sales by auction and especially for taxes. In some states, if the consideration is more than the amount of the delinquent taxes, regardless of how small the excess, the sale is held void under the scheme or provisions of their tax laws. It is also said that in continuing to enforce the rule we may hinder, rather than facilitate, the collection of

revenue because, as Black says, it is the general rule that prices habitually paid by purchasers at tax sales are grossly out of proportion to the value of the land. Yet, while the rule has been applied by this court to tax sales under a variety of procedures, as prescribed by the State, and by the cities and counties for special taxes, it has developed mainly under the procedure requiring a civil suit and a judicial sale where a court had supervision of the process, trial, judgment, execution, and levy. Even though such a procedure offered the taxpayer the greatest safeguard, still we have held in effect that the need for taxes does not justify confiscation of a man's property, even by law.

Should we give no weight to the fact that this rule grew up under such a procedure where a much more liberal construction of the acts and proceedings was allowable than is permitted in a non-judicial, summary, ex parte sale for taxes, as now provided by the present Jones-Munger law? Is this court now to abandon the rule because a different proceeding has been substituted when that proceeding is summary, ex parte, and without such supervision? If we have heretofore prevented what we regarded as confiscation under a law liberally construed against the taxpayer, are we to permit it under a different law requiring strict construction in his favor?

We think not. If we should do so in this instant case, wouldn't we, as Judge LAMM said in the Mangold case, "come back to the broad doctrine sooner or later" and only add more confusion to an already unstable field?

Let us now turn to the provisions of the Jones-Munger law which are said to make the application of the rule no longer necessary or proper. There is first called to our attention the privilege of redemption which is permitted in some instances (Secs. 11145-6). Where redemption may be had the sale is not a finality as to the owner. Therefore, there is no need for a rule, it is argued, which was developed for the purpose of granting relief because of the finality of a judicial sale with its attendant hardships. Support for this contention is found in State ex rel. Reed v. Elliott, 114 Mo. App. 562, 90 S. W. 122; Black, Tax Titles (2 Ed.), sec. 238; and Cooley, Taxation (1924), sec. 1428.

Some of the sales provided for under the Jones-Munger law do not allow redemption. In the case where the property has been offered for sale for two successive years and no sale made because of no bid equal to the amount of delinquent taxes and charges, then at the next regular tax sale the collector shall sell such property to the highest bidder, "and there shall be no period of redemption from such sales." Such sales are therefore final. (Sec. 11130.)

Redemption is provided, we believe, for the purpose of affording simple and quick relief from the harshness of a summary, ex parte procedure. It is not relief afforded because of a wrong perpetrated

upon a person. It affords relief from a sale valid in every particular. It is in addition to relief from a wrong. It does not displace the right of relief in equity to right a wrong, to do justice and equity, to relieve from a sale void because of fraud. There is nothing to indicate, nor is there any reason to believe, that the Legislature even contemplated that such privilege of redemption should oust or limit the right of relief from fraud of any description in the execution of the law which relief has been so long afforded in this State.

A failure of a property.owner to redeem or his failure to pay the taxes which brought about the sale does not forfeit his right to relief in equity. We have previously considered this theory in Voights v. Hart, 285 Mo. 102, 226 S. W. 248. That was a case to set aside a city treasurer's deed given under a law with provisions similar to the Jones-Munger law although it applied to special taxes in Kansas City. That law provided for a certificate of purchase to be given upon a sale for non-payment of taxes, a five-year period of redemption, and if no redemption, then a conveyance by a deed from the city treasurer. The owner failed to pay the taxes and failed to redeem. We held under the facts of that case the defense of laches was untenable. "If laches could be imputed to the property owner for merely failing to redeem or allowing his property to be sold for taxes, he would lose the title to his property, whether such tax sales and deeds were void or valid, which it would hardly be contended is the law. The return of the principal with twelve per cent interest per annum on all sums paid out for taxes by the holder of the invalid tax deed, which the city charter required, which was done by plaintiffs, is all that a court of conscience could require in such cases."

Certainly every man should pay his taxes to support his government. If he neglects to do so he should suffer the penalty prescribed by law but only when that penalty is enforced lawfully and free from fraud, actual or constructive. If the failure to pay taxes and the failure to redeem are to bar a property owner from contesting the validity of a sale of his property for taxes, then all such sales become incontestable even for fraud. Such is not the law.

■ Nor may it be argued that the two-year period of redemption serves in the nature of a limitation of the time of granting relief from fraud. The need for relief in equity arises when the right of redemption is gone and the property is or is about to be conveyed by reason of a fraudulent sale. Another provision of the law (Sec. 11177) sets up a special Statute of Limitations of three years (except in certain instances) from the time of recording the tax deed in suits to avoid a tax sale. It need only be pointed out that no deed may be given while the privilege of redemption exists.

■ The Jones-Munger law (Sec. 11127) directs the sale of the property or as much of it as necessary, when offered the first and second times for a consideration which "will pay the taxes, interest

and charges thereon, or chargeable to such person in said county."
May it be said that a court of equity is powerless to interfere on the
ground of an inadequate consideration when this provision is observed?
We think not.

This provision in no way comprehends the value of the property
sold. It is for the protection of the State in the collection of taxes
in full. After land has been offered twice with no sufficient bids then
at the third offering it is sold regardless of the amount bid. (Sec.
11130.) This provision takes care of the case where the value of the
land may not equal the amount of taxes and charges against it. Yet
under either provision, if the land is sold for a grossly inadequate
consideration, may a court of equity in the face of such provisions
 interfere to protect the owner as it has in the past? The answer
is yes. The rule grew up under a somewhat similar statutory pro-
vision relating to the sale in the law of 1877 which remained un-
changed until the adoption of the present law in 1933. It provided
that "the real estate, or so much thereof as may be necessary to satisfy
such judgment [for taxes], interest and costs, be sold . . ."
Should such an argument be a valid one, then inadequacy of
consideration would not be nor ever would have been of any concern
even in judicial sales because of the statute governing such sales
requiring the sale to the highest bidder so long as this statute was
followed. Our long line of decisions have consistently ruled otherwise.

Furthermore, we find in the same section of the Jones-Munger law
(Sec. 11127) providing for the sale the requirement that "the person
offering at said sale to pay the required sum for the least quantity
of any tract shall be considered the purchaser of such quantity:
*Provided,* no bid shall be received from any person not a resident of
the State of Missouri, until such person shall file with said collector
an agreement in writing consenting to the jurisdiction of the circuit
court of the county in which such sale shall be made, and also filing
with such collector an appointment of some citizen of said county as
agent of said purchaser, and consenting that service of process on such
agent shall give such court jurisdiction to try and determine any suit
growing out of or connected with such sale for taxes." Note that
this provision refers to *any* suit and is not restricted to such suits as
are specifically mentioned in the law as the suit to quiet title (Sec.
11169) or the suits to set aside the collector's deed for the grounds
stated in Section 11162.

 The latter section states: "In all suits and controversies in-
volving the title of land claimed and held by virtue of the deed exe-
cuted by the county collector for non-payment of taxes thereon, under
this tax law, the person claiming by adverse title to such deed shall be
required to prove, in order to defeat the title conveyed by such deed,
either that the land described therein was not subject to taxation at
the date of assessment of the tax for which it was sold, or that the

taxes for the non-payment of which the land was sold were paid to the proper officer within the time limited by law therefor, or that the same had not been assesssed for the taxes for the non-payment of which it was sold, or that the same had been redeemed pursuant to law, or that a certificate in proper form had been given by the proper officer, within the time limited by law for paying taxes or for redeeming from sales made for the non-payment thereof, stating no taxes were due at the time such sale was made, or that at the date of the deed the redemption period had not expired.'' This section assumes a conveyance under a valid sale except for one of the reasons specifically enumerated and is not concerned for example with a sale which is void because of the manner in which it is conducted such as one in which there is fraud. Because of this section it cannot be said that the Legislature intended to prohibit suits on other grounds. The law itself shows a contrary intention. In a later section general reference is made to other causes than those mentioned. Section 11170 provides that if any conveyance made pursuant to a sale "shall prove to be invalid and ineffectual to convey title for any other cause than such as are enumerated in Section 11162" then the State's lien shall remain vested in the grantee in such deed.

█ Finally, let us consider how the present law operates in conjunction with the rule. A workable and logical scheme ensues. No party to a sale under the law is hurt, nor do we believe that the effect of the law is minimized. The purpose of the law, of course, is to aid the State in the collection of its taxes. The State is not hurt. When a sale is made it receives its taxes. Additional taxes are collected upon the conveyance. A proceeding to set aside a sale for fraud does not affect these taxes so paid. The purchaser is not hurt. When he purchases at a tax sale he knows he will have to await at least the expiration of the term of redemption before he receives a deed. If the property is redeemed he is reimbursed for all money spent, with interest, higher than the prevailing rate and which may run as high as ten per cent (Sec. 11145). If, before a conveyance is made the county collector finds the sale was invalid, he must reimburse the purchaser with interest (Sec. 11155). A person suing to set aside a conveyance both by established principles of equity and also by express statute must make a tender which will reimburse the purchaser (Sec. 11179). And see Hawkins v. Heagerty, 348 Mo. 914, 156 S. W. (2d) 642. The purchaser is protected █ under any circumstance. He cannot lose any amount he has paid but is reimbursed with interest. In addition, he may receive rental from the property under certain conditions (Sec. 11135). The purchaser knows that his deed is subject to attack if the provisions of the law have not been complied with. He must also be presumed to have some idea about the value of the property from the fact of his purchase. Consequently, if he is doubtful about the validity of his purchase because of a grossly in-

adequate consideration, he may, immediately upon receiving a deed, commence a suit to quiet his title (Sec. 11169). On the other hand he may do nothing and await possible action by the owner which the statute says must be brought within three years from the recording of the deed (Sec. 11177). Under the circumstances both the purchaser who buys land at a tax sale for occupation and the purchaser who buys for speculation, have reasonable protection.

We do not attempt to establish any rule of decision fixing a definite percentage of the value as an adequate consideration. The Legislature has enacted a law providing for the judicial confirmation of all tax sales in those counties and cities not now covered by the Jones-Munger law. It requires confirmation if the amount bid "shall exceed fifty per cent of the value of the property." [Sec. 11191, R. S. 1939.] Perhaps the experience gained through such a procedure may justify a wider application. [See Gill, Missouri Tax Titles.] However, that question is not for us, but for the Legislature.

█ Now getting back to the instant case we hold that the consideration of $11 paid for land valued at $2,000, the lowest figure given to it, is so grossly inadequate and unconscionable as to amount to fraud. Therefore, since fraud vitiates everything it touches, the sale is invalid and should be set aside.

The judgment of the trial court is reversed and the cause is remanded with directions to the trial court to enter a judgment in conformity with the prayer of the petition. *Tipton, Clark, Hays, JJ.*, and *Gantt, C. J.*, concur; *Leedy, J.*, dissents in separate opinion; *Ellison, J., dissents* and concurs in opinion of *Leedy, J.*

## DISSENTING OPINION.

LEEDY, J.—I am unable to agree that the facts of this case call for, or in anywise warrant, the application of the rule upon which the principal opinion is grounded. I think the judgment should be affirmed, and so I respectfully dissent, for reasons following:

██ I. Before reaching and deciding the single question put to us by plaintiff, i. e., "whether relief should be granted because of the inadequate consideration," it is incumbent on us to notice the state of the record upon which that question is said to arise. As forecast in the principal opinion, the equities of the case are not heavily with plaintiff. It is a corporation whose function is to act as a holding company for family real estate, and which is otherwise "not very active." It must be conceded that one of the first obligations and primary duties of such a corporation relates to the matter of discharging, or, if so disposed, to protect itself against foreclosure of, the state's tax liens. It was remiss in that duty, for which it does not pretend to offer an excuse. In this situation it is entitled to "cold law—no more, no less." We are confronted with its solemn

admission made in open court, near the close of the entire case, in language as follows: "If our stipulation doesn't cover it, I will let the record show at this time that we make no attack on the *validity* of the sale or the regularity of the proceedings leading up to the sale." It is on such a record that the principal opinion holds the tax sale void, not for actual fraud, but upon the highly artificial doctrine of fraud in law. This, I think, untenable because plaintiff, by the stipulation above set forth, has admitted itself out of court; but I do not want to be understood as urging this as the principal ground of my dissent.

II. As to the merits of the question, it is my thought that in applying to the facts of this record the rule of decision in cases of execution sales involving inadequacy of consideration, so gross as to amount in itself to evidence of fraud, the majority opinion falls into fundamental error. It fails to give effect to pertinent provisions of the act which prescribes our present statutory system for the collection of delinquent real estate taxes, popularly known as the Jones-Munger Act. [Laws 1933, pp. 425-449, sec. 9945 et seq., p. 7980 et seq., sec. 11117 et seq. R. S. '39, Note: In the course of this opinion, reference will ▮▮▮ be to section numbers as shown by the 1939 revision except as otherwise noted.] In my judgment, the effect of the holding will be to hamper and impede, if not to utterly destroy, the workability of that act by writing into it a requirement not placed therein, either expressly or by fair implication, by the lawmakers; and, indeed, I think directly contrary to the plain provisions thereof.

We may judicially notice the distressed state of affairs as respects the stagnated condition of tax collections at the time the Legislature in 1933 put an end to the former method of foreclosure by suit and special execution, and enacted the present scheme of sale by the collector upon published notice without resort to judicial proceedings. The act itself contains a legislative recognition thereof, and what amounts to a declaration of the purpose of the new system, from which no divining power is necessary to appreciate the evils sought to be remedied. Section 9963(e) [Laws, 1933, p. 449, not carried in the 1939 revision] provides: "Public welfare and necessity demand that legislation be enacted to encourage the payment of delinquent and unpaid taxes, to promote the payment thereof and to protect the property owners of this state from foreclosure of their homes and property for delinquent taxes in order that the economic and industrial life of the state may be preserved. . . ."

Sales under execution, culminating in the foreclosure of tax liens, and tax sales under the statute we are considering are marked by wholly different characteristics. The effect of the former is to pass at once all the right, title and interest of the owner, and he cannot

thereafter assert any further claim to the property. However, no such drastic effect flows from the tax sale itself under the present statute (except in those instances provided by Sec. 11130). Under Sec. 11133 the purchaser receives a mere certificate of purchase, one of the incidents of which is to transfer to him the tax lien. As broadly stated in Cooley on Taxation (1924), sec. 1452, and quoted approvingly in State ex rel. City of St. Louis v. Baumann, 348 Mo. 164, 153 S. W. (2d) 31, the holder thereof is recognized as the "owner of an inchoate title which would become complete if the time for redemption expired without its being made." But whatever may be the exact nature of the right or interest thus acquired, it is subject to be divested at any time during the two years next ensuing, by the exercise of the absolute right of the "owner or occupant . . . or any other person having an interest" to redeem "by paying . . . the full sum of the purchase money . . . and all the costs . . . with interest," etc. as provided by Sec. 11145.

This right to redeem, accorded by the statute is, of course, for the benefit, protection and security of the landowner. By virtue of it and other applicable sections, it will be seen that the earliest possible time at which a landowner may lose his property for failure to pay the taxes thereon is approximately four years from their due date, computed as follows: They may be paid during the year in which due, plus the delinquency period of approximately a year before being liable to sale, plus the redemption period of two full years, or, in the aggregate, nearly five years from the date of assessment. This fact, coupled with certain mandatory provisions of the act presently to be noticed, makes it clear to me that a sale for the full amount of taxes, interest, penalties and costs (as in the case at bar) may not be set aside on the mere ground of inadequacy of consideration where (the owner not being under any of the disabilities mentioned in Sec. 11146) no effort was made to redeem, nor any excuse offered for failure so to do, during the statutory two-year period. The statute does not contemplate or require that the land shall bring a sum bearing any relation either to its assessed value, or its market value, if there is such a difference. I think it is sufficient, and the letter and spirit of the statute have been complied with, if and when the state is made whole. Witness the statute in that behalf: "On the day mentioned in the notice, the county collector shall commence the sale of such [delinquent] lands, and shall continue the same from day to day until so much of each parcel assessed or belonging to each person assessed, *shall be sold as will pay the taxes, interest and charges thereon,* or chargeable to such person in said county. The person offering at said sale to *pay the required* sum for the least quantity of any tract *shall be considered the purchaser,*" etc. [Sec. 11127.]

This view is fortified upon a consideration of Sec. 11129, supra, which provides that if at the first offering "no person shall ▮▮▮ bid therefor a sum equal to. the then *delinquent taxes thereon with interest, penalty and costs*" the lands shall be reoffered the next year, with a like provision as to reoffering the second year. Then it is provided by Sec. 11130, "Whenever any lands have been . . . offered for sale for delinquent taxes, interest, penalty and costs . . . for any two successive years and no person shall have bid therefor a sum equal to the *delinquent taxes thereon, interest, penalty and costs provided by law, then*" the same "shall at the *next* regular tax sale" be sold "to the highest bidder, and there shall be no period of redemption from such sales." I pause to inquire whether this section, too, is not rendered nugatory under the principal opinion, holding the sale in question void because the bid at which it was sold was not a sufficient percentage of the value of the property to constitute an adequate consideration.

The purpose of the tax sale is to collect taxes, and we judicially know that taxes levied on property generally bear a very slight proportion to its value. The result is that the buyer, under either the old or the new system, receives property of greater value, potentially or actually, than the taxes. The likelihood thereof is one of the incentives for bidding. The California view seems to be apposite: "The sale is for the benefit of the taxing body and it is expected that the price will bring it out whole. This is the first concern in tax sales *and not that the owner may receive the reasonable value of his property*. If this were required there would be few bidders at tax sales . . ." (Italics mine.) [R. C. A. Photophone, Inc. v. Huffman (Cal. App.), 42 P. (2d) 1059.]

Contrasting the holding of the principal opinion with that of a number of the courts in states having similar statutory schemes, it is paradoxical that in the latter it is not infrequently held that if the sale is "for the amount *exceeding* the aggregate of taxes, costs, penalties and charges for which the land is legally and actually liable the sale is entirely void and passes no title." [61 C. J., p. 1192, citing thirty or forty cases from Ark., Cal., Ill., Kan., Ky., Minn., N. H., N. J., Tex., Utah, Wis. and Canadian Provinces.] Of course, our statute contemplates that bids for more than the amount of taxes, interest and costs may, in some instances, be offered, for it expressly provides that the amount of the surplus, if any, shall be noted in the certificate of purchase [Sec. 11133], and be paid by the collector "to the person entitled thereto"—the [former] owner or owners, agent or agents. [Sec. 11159.] Of course, a small bid is distinctly favorable to the landowner in the ordinary transaction, for in order to redeem he must pay interest not only on the items giving rise to the sale, but in addition thereto, interest at not more than 10% per annum on the surplus refundable to him. I do not think, when the provisions

for redemption are considered, that the lawmakers intended that the bidders are required, in addition to making the state whole, to bid some fair percentage of the value of the property as a consideration, thus affording the alternatives of redemption or outright sale, at the landowner's election.

The cases giving rise to the rule applied by the principal opinion show that the bids at the sales were insufficient to pay even the amount of the taxes, of which Mangold v. Bacon, 237 Mo. 496, 141 S. W. 650, and Ellis v. Powell (Mo.), 117 S. W. (2d) 225, are examples.

It is expressly admitted that the sale in the case at bar was held in strict conformity with the statute. The statute is plain and unambiguous, the legislative intent is clear, and it should be given effect. If this be true, it follows that it was not only the right, but the mandatory duty of the collector, to sell at the bid made by the purchaser in question; and, accordingly, the sale should be upheld.

I am quite strongly of the opinion that it simply will not do to say that a real estate holding corporation, or, for that matter, any person *sui juris*, may neglect to pay taxes on its real estate for a period of eight years (1928-1936), and in the meantime suffer the property to be sold in strict conformity with the statute, neglect to exercise the right of redemption, wait months (seven in this instance) after the lapse of the redemption period, and then, *admitting the regularity and validity of the sale*, invoke the jurisdiction of a court of equity for relief on the sole ground of inadequacy of consideration. If this may be done seven months after the redemption period, then there is no reason why it may not be done seven years thereafter, and so upset our whole system of delinquent tax collection. I deny that in such instances the landowner may elect so to wait, and at his convenience, bring his suit, and be restored ▮▮▮ to ownership on the sole showing of inadequacy of consideration, where the bid was sufficient to make the state whole, and satisfied the requirements of the statute. We have often said that a court of conscience does not sit to correct the evils of negligence. *Ellison, J.,* concurs.