AUGUSTA BRIGMAN MOORE, Appellant, v. FANNIE E. BRIGMAN and SULLIVAN BRIGMAN.—No. 39864.—198 S. W. (2d) 857.

Division One, January 13, 1947.

W. Clifton Banta for appellant.

890 .

*Stephen Barton* for respondents.

VAN OSDOL, C.—Action instituted. May 12, 1944, to quiet title to the west half of Lot Three, Block F, of Chapman's Addition to East Prairie, Mississippi County; the trial court found for defendants and entered a decree adjudging that defendant, Fannie E. Brigman, is the absolute owner, and that plaintiff has no interest in the property. Plaintiff has appealed.

Defendants-respondents are husband and wife, and defendant-respondent, Sullivan Brigman, is the brother of plaintiff-appellant.

892

November 6, 1939, the property was exposed for third sale under the provisions of the Jones-Munger Tax Law (Section 11108 et seq., R. S. 1939, Mo. R. S. A.) and defendant Sullivan Brigman bid in the property for $155, making a check to the collector for $172.53, the amount of the bid plus taxes payable in 1939. The delinquent taxes, interest and charges amounted to $108.98. It was not intended the check should be considered as payment, but the collector and defendant husband treated the check as evidence of the bidder's good faith; the defendants had not then sufficient funds in hand to actually pay the bid; and the collector's deed, although dated November 6th, was not signed, acknowledged and delivered until November 25th. However, "just before" the sale defendant wife, Fannie E. Brigman, who was subsequently made the grantee in the deed, had arranged to borrow sufficint money to pay the consideration for the property, in the event her husband became the successful bidder. A residence building is situate on the half lot so sold. And other facts will be noticed in our examination of the parties' contentions infra.

By answer, defendants admitted the claim of ownership of defendant wife; denied any interest in the land in plaintiff; and affirmatively pleaded estoppel, and the statute of limitations.

In all cases tried upon the facts without a jury, the appellate court reviews the case upon both the law and the evidence, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. The trial court in the instant action made no findings from which we can see the precise basis of the rendition of judgment for defendants.

Plaintiff-appellant states her points, or contentions, as follows, (1) the amount of the bid, $155, was so grossly inadequate as to render the tax deed void; (2) the sale was void because the bid was not "immediately" paid; (3) the collector's deed is void because it does not recite the property had theretofore been twice exposed for sale; and (4) fraudulent conduct (subsequent to the sale, but before the consideration was paid) of defendant husband and the collector nullified the sale.

The testimony of the several witnesses, pertaining to the value of the property in 1939, varied greatly. Generally the property's value was estimated as between five and eight hundred dollars; although one witness, defendant wife, placed its value as of two to five hundred dollars; and another, defendant husband, as of two hundred fifty or three hundred dollars.

Several cases treat with the question of inadequacy of consideration in tax sales under the Jones-Munger Tax Law. A consideration paid at a tax sale "which is so grossly inadequate as to shock the conscience, by itself establishes fraud." See Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S. W. 2d 813, in which case the consideration was $11 for land valued at $2000 to $4500, the delinquent taxes being

$10.59. The Jones-Munger Tax Law contemplates a sale for a consideration sufficient to pay the delinquent taxes, interest and charges, and a sale for an unconscionably inadequate sum, which sum does not pay the delinquent taxes, interest and charges, is a fraud upon the State, as well as upon the taxpayer. See Mahurin v. Tucker, Mo. Sup., 161 S. W. 2d 423, in which case the consideration was $2.50 for land worth from $400 to $700, it being inferred the delinquent taxes, interest and charges exceeded $2.50. Other cases holding considerations so grossly inadequate as to constitute legal fraud are mentioned in the case of Johnson v. McAboy, 350 Mo. 1086 at page 1091, 169 S. W. 2d 932 at page 935, in which case land worth from $1000 to $2000 was sold for $79.05. See also Heagerty ▆ v. Hawkins, Mo. Sup., 173 S. W. 2d 923, wherein the delinquent taxes, interest and charges amounted to $125.12, the consideration $10, and the value of the land $600 to $700; Rudd v. Scott, 351 Mo. 1206, 175 S. W. 2d 774, wherein the delinquent taxes, interest and charges amounted to $33.01, the consideration $12.50, and the property value $600; Daniel v. Mollett, 354 Mo. 50, 188 S. W. 2d 54, wherein the delinquent taxes amounted to $430.10, the consideration $205, and the value of the land "in excess of $1,060," in the case this court upheld the trial court's action in cancelling the deed, observing that the Jones-Munger Tax Law "contemplates that the bid at a tax sale thereunder should be sufficient to pay the delinquent taxes, interest, and charges where the reasonable value of the real estate is greater than that amount." Defendants in the Daniel-Mollett case argued the bid of $205 constituted a greater percentage of the value of the property sold than the bids in cases relied upon by plaintiffs. However, no authorities were cited establishing reversible error. We see the consideration in the Daniel-Mollett case was a little less than one fifth of a sum which was less than the land's value, and the consideration was less than the total delinquent taxes, interest and charges. And in De Tienne v. Peters, 354 Mo. 166, 188 S. W. 2d 954, the taxes due amounted to $455.73, the consideration $180, and the value of the land "in excess of $1,600"; in that case this court, in ruling, upheld the wording of the trial court's decree (in so far as applicable to a one-third interest in the land) "that the consideration of $180 . . . was so much less than the taxes due on said real estate and was so grossly and shockingly inadequate and unconscionable as to constitute in and of itself a badge of fraud and a fraud in law upon this plaitniff . . . and the State of Missouri."

In the case at bar, as stated, the delinquent taxes, interest and charges amounted to $108.98, the consideration $155, and the land of the variously estimated value from $200 to $800. The consideration does not transgress the observation in the opinion of Daniel v. Mollett, supra, inasmuch as the consideration, in our case, paid the

894

delinquent taxes, interest and charges—there was no fraud upon the State.

But, in our case, assuming the property sold to have been of the maximum estimated value, $800, the consideration, $155, in some unascertainable or indefinite degree approaches a percentage of the value, as the consideration, $205, was to the value "in excess of $1,060" in the Daniel-Mollett case, supra. But now, in the instant case, the evidence shows the house was a frame "story and a half" building, built thirty-eight or forty years ago. The house was (in 1939) "dilapidated" and "in very bad" condition; it needed painting and repairing; the chimneys were cracked and needed rebuilding; the porches neeed fixing; and the upstairs windows "were rotted clear out and nailed up with boards across the windows." The house in 1939 was rented for $6 per month. Considering the testimony ranging the estimated value downward from the maximum estimated value, $800, and the evidence of the condition of the property, the weight of the evidence impels the view (which quite apparently was that of the trial court) that the maximum estimate was very substantially in excess of the reasonable value of the property in 1939; and, in our opinion, the consideration was not so grossly inadequate as to amount, in itself, to conclusive and decisive evidence of fraud. The consideration was indeed inadequate, although not unconscionably so we believe, as stated, and there was no circumstance shown in evidence relating to the sale which would indicate irregularity, mistake, fraud or unfairness. See now again Bussen Realty Co. v. Benson, supra, wherein the sale of lands for delinquent taxes under the Jones-Munger Tax Law was likened unto a judicial sale of lands under execution and wherein it was said, " 'Inadequacy of price alone will not justify the setting aside of a sheriff's sale under execution of real estate, unless the price is so inadequate as to shock the moral sense and outrage the conscience . . . ' Davis v. McCann, 1898, 143 Mo. 172, 44 S. W. 795, 796."

Section 11132 R. S. 1939, Mo. R. S. A., provides the purchaser at a tax sale shall "immediately" pay the amount ▉ of his bid to the collector. In the instant case, the collector "did not usually make deeds on the day of the sale . . . we couldn't do that." He told defendant husband the deed would be delivered in "a week or ten days, maybe longer." And the collector wanted the money when "I deliver the deed." According to the husband's testimony, the collector got the money when he had the deed ready, November 25th. The testimony of defendant husband, that the money was paid in full to the collector, November 25th, is substantiated by the undisputed evidence the defendant wife procured a loan (for which, as we have noticed, she had tentatively arranged before the sale) on that day for the very purpose. Such loan, as consummated, was evidenced by the defendant wife's note dated November 25,

1939, and her deed of trust (securing the note) of even date, signed and acknowledged, and filed for record the same day, November 25, 1939. It has been said the requirement of statute that the sum bid at a tax sale shall be paid "immediately" means "it must be paid with reasonable promptness, and an inconsiderable delay will not invalidate the sale, especially when caused by the congestion of business in the treasurer's (here the collector's) office." 61 C. J., Taxation, sec. 1636, p. 1211. See also Vol. III, Cooley, The Law of Taxation, 4th Ed., sec. 1435, pp. 2842-3.

The scrivener in preparing the collector's deed utilized a form entitled, "Collector's Deed for Lands Sold for Delinquent Taxes at Third Sale." The form contained printed clauses with blank lines for use in making recitations of the first and second sales; these printed clauses were deleted by the scrivener, and the deed as executed recited, "Whereas, said real estate, after having been duly advertised, was by said collector offered *the third time* for sale . . . " (Our italics.) The cases, cited by plaintiff, holding tax deeds void where statutory requirements essential to a valid sale were not stated in the deed (or were stated by mere conclusions) were cases decided prior to the Jones-Munger Tax Law. A collector's deed in which the statutory requirements essential to a valid sale under the Jones-Munger Tax Law were stated by conclusions was held valid in Burris v. Bowers, 352 Mo. 1152, 181 S. W. 2d 520. The recitation, "said real estate . . . was by said collector offered the third time for sale," definitely implies the two prior offerings. The tax deed held void in the case of Burden v. Taylor, 124 Mo. 12, 27 S. W. 349, cited by plaintiff, was "a mere skeleton, and is defective in so many respects that it would be tedious to particularize them." Of course, the compliance with the requirements of statute essential to a valid sale stated particularly or by conclusions could not make the statement of the requirements conclusive of their fulfillment. Burris v. Bowers, supra; Burden v. Taylor, supra. But, in our case, plaintiff does not contend the sale was not the result of an offering "the third time" as recited in the deed.

November 12, 1939, after defendant husband had bid in the land, he wrote his sister, plaintiff, a letter telling her, "if you want to redeem it send me the $172.53 (by Wednesday) and I will mail you a quit claim deed." Defendants received no reply to this letter, and plaintiff had made no tender of any sum to defendants until the institution of the action. However, on December 29, 1939, plaintiff sent the collector a check for $55 "as part payment on taxes" on the property. The cancelled check bears the endorsement of the collector. It is the plaintiff's contention or position that defendants had not paid the bid to the collector prior to the collector's receipt of this check and that the sum, $55, was used by defendant husband in part payment of the consideration. Plaintiff stresses evidence tending to show

that defendant husband, the collector and plaintiff, subsequently to the sale, made an arrangement whereby plaintiff could pay the delinquencies "as soon as I could." Plaintiff's position is to some extent substantiated by the testimony of the collector; but the collector's testimony is equivocal in this connection; and the testimony of defendant husband is unequivocal and positive that he had not been a party to any such arrangement, and that he, for his wife, paid the consideration in full to the collector on the ▮▮▮ day, November 25th, the deed was executed, delivered and recorded. As we have said, supra, defendant husband's testimony is corroborated by the evidence defendant wife consummated a loan on that day for the very purpose. The position of plaintiff that defendant husband used plaintiff's money, $55 (sent to the collector December 29th), to in part pay his bid is undermined by the fact (established, in our opinion) of the prior full payment by defendant husband for defendant wife on November 25th. In ruling this and other contentions we bear in mind defendant husband, Sullivan Brigman, was not acting for his sister, plaintiff. Although plaintiff had alleged, "said property was being looked after by her brother," she stated from the witness stand, "You were misinformed. He did not act as my agent. I didn't need an agent."

▮▮ We find it unnecessary to examine into the parties contentions relating to estoppel and limitation of action. However, we feel it proper to state that evidence was introduced tending to show plaintiff, prior to the collector's sale, had journeyed from St. Louis (where she and her husband reside) to East Prairie, thence to Charleston, and had endeavored to negotiate a loan for sufficient money to pay the delinquent taxes. There was then a mortgage on the property which prevented plaintiff from getting an additional loan of sufficient moneys to pay the delinquencies (we infer the holder of the note secured by the mortgage looked to plaintiff personally for the note's payment, inasmuch as the holder did not move to protect the property from sale for taxes); and plaintiff returned to St. Louis, having apparently abandoned all effort to protect the property from sale. It was then that defendants became interested in buying the property "to keep it in the family." And after the sale, as we have seen, defendants afforded plaintiff an opportunity to redeem, although it is not here said they were under any legal obligation so to do; plaintiff did not thereafter communicate with defendants concerning the property. Defendant wife has, since the purchase, improved the property, which now (at the time of trial below) is worth from $2000 to $2500. Of course, plaintiff's payment of the sum of $55 and the evidence tending to show the collector retained such sum has not been lost sight of; and it is here stated it could be reasonably inferred the money was set off by the collector against taxes due and payable on other lands belonging to defendant husband. Neverthe-

less and however that may be, we are of the opinion the trial court's decree was right and just and equitable.

The judgment and decree should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur except *Conkling, J.*, not sitting because not a member of the Court when the cause was submitted.