JAMES T. STROHM, Respondent, v. GEORGE BODEN, FREDERICK G. BODEN, JOHN T. WIRT and VELTA M. WIRT, Appellants, No. 41068—222 S. W. (2d) 772.

Division Two, July 11, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, September 12, 1949.

*Cortner & Beals* and *Dwight Beals* for appellants.

*C. O. French* for respondent.

BOHLING, C.—James T. Strohm instituted this suit in equity June 20, 1946, against George Boden, Frederick G. Boden, John T. Wirt and Velta M. Wirt to cancel a certain tax deed on the ground the consideration was grossly inadequate, for an accounting, an adjustment of equities and a money judgment in accord therewith, to quiet title, and for possession. Defendants appeal from the decree for plaintiff. Defendants' principal contentions are that plaintiff is not entitled to recover because he was not injured by the fraud, that the rights of bona fide purchasers have intervened, and that plaintiff is not entitled to the relief sought in a court of equity.

William L. and Maye B. Perkins, husband and wife, acquired the record title to the lot (known as 3724 Olive street, Kansas City, Missouri), October 5, 1933, subject to a first deed of trust securing $1,500 and a second deed of trust securing $250.

On December 15, 1937, Kansas City sold the lot for delinquent city general taxes and a special assessment tax for 1937. The bid was $28.70, at 12% interest annually, being the amount of the taxes, penalties and costs. The only question concerning this sale is the adequacy of the bid. Notation of the tax sale was made in the proper tax book opposite the listing of said lot, as required by ordinance: "Sold to W. Hickman, $28.70 at 12 per cent, December 15, 1937." A certificate of purchase was issued on January 31, 1938, to W. Hickman, the successful bidder, and in due course was assigned on January 17, 1943, to Frederick G. Boden.

On March 4, 1938, Mr. and Mrs. Perkins conveyed this lot by warranty deed (recorded March 16, 1938) to James T. Strohm, plaintiff, "subject to a deed of trust of record securing a note for $1,500." Strohm paid the grantors nothing therefor. At the time he was engaged to the daughter of the said grantors, although they never married and later he married someone else.

Plaintiff took immediate possession and collected approximately $650 in rents. He paid out approximately $210 for improvements and maintenance. He testified he paid a Mr. Bales the $250 second deed of trust, which has not been released of record. Bales stated plaintiff paid the balance then due, one hundred and some dollars. Plaintiff claimed he paid between $150 and $200 on the $1,500 debt, paying $15 at a time out of the rent between August, 1938, and August, 1939, to Mrs. James B. Crosby. Administration proceedings on the estate of Mrs. Crosby, deceased, established that she died July 10, 1938. Plaintiff never paid any taxes. He never saw an abstract of title and did not attempt to check the title.

Mr. and Mrs. R. J. Atkinson were occupying the property in August, 1940. Mrs. Atkinson testified that Frederick G. Boden informed them he was going to collect the rents and they moved because they refused to pay the rent to two people.

Plaintiff testified that he telephoned to Frederick G. Boden and inquired why he was asking rent of the Atkinsons and, after some conversation, was referred to George Boden, Frederick's father; that about the middle of September, 1940, he finally got to talk with George Boden, who in answer to inquiries stated he was handling the property for Mr. Crosby (we understand, a son of Mrs. Crosby); that he next talked with George Boden in 1945, thinking the rents should have placed the property in good financial position; that Boden told him he, plaintiff, had no interest in the property; and that witness then made inquiry as to his rights.

George Boden testified that the first time (he said in 1940 or 1941) he saw the property it was vacant, with windows missing and some of the plumbing stolen, and improvements were necessary to rent it; that he never saw or talked with Mr. Atkinson; and that he never saw or talked with plaintiff until June, 1945.

The City issued its tax deed on September 8, 1944, conveying the lot to Frederick G. Boden. It was recorded September 12, 1944. In 1944 the grantee paid a total of $481.81 in delinquent state, county, and city taxes on the property. The rentals collected exceeded said sum. Up to September 12, 1944, he paid $478.03 for maintenance, repairs, and improvements to the property.

On March 17, 1944, Frederick G. Boden and John T. and Velta M. Wirt, husband and wife, entered into a contract of purchase and sale for the property. The Wirts contracted to pay $2,750 therefor, payable: $250 cash and $30 monthly, plus 6% annual interest on unpaid balances for five years, when the balance became payable. Boden covenanted, among other things, to convey by deed "warranting the title as of the date hereof."

The Wirts had paid $1,510 on the principal, plus interest, under said contract as of the time of trial. They also paid $177.35 for taxes, $362.19 for a new furnace, and approximately $125 for painting, papering, and labor.

The court found the property was worth between $2,000 and $2,750 at the time of the tax sale, and $28.70 to be a grossly inadequate consideration therefor. The value as of December 15, 1937, was placed by witnesses for plaintiff in the neighborhood of $2,500 to $3,000 and by witnesses for defendants in the neighborhood of $1,000. It was in evidence that between December, 1937, and March, 1944, when the Wirts contracted to purchase, the value of property had increased generally and that the improvements also enhanced the value of this property.

Frederick G. Boden testified, in part, that he was associated with his father in the real estate business; that he first looked at the property in 1939 or 1940; that he was in the service in World War II, we understand, from June, 1942, to about November, 1945; and that his father saw that he received the rents.

The court on February 6, 1948, dismissed plaintiff's bill and adjudged the title in Frederick G. Boden subject to the Wirt contract of purchase. However, upon plaintiff's motion for new trial or, in the alternative, a new opinion and judgment, the court on April 13, 1948, made new findings of fact: "Wherefore, plaintiff's motion for new trial is overruled and his motion to set aside the Court's former judgment and decree and enter a new judgment and decree in favor of the plaintiff is sustained"; and, in accord therewith, canceled the city tax deed on account of the inadequate consideration, adjudged the title in plaintiff, entered a judgment for plaintiff against George Boden and Frederick G. Boden for $1,503.19, gave John T. and Velta M. Wirt a special lien upon said judgment for $833.66, decreed said Wirts had no right, title, or interest in said property, and ordered them to vacate the property within sixty days.

Defendants contend that the decree of April 13, 1948, may not stand because, in effect, after overruling plaintiff's motion for new

trial the court had no jurisdiction to set aside the judgment of February 6, 1948 (citing, among others, §§ 113, 114, 119, 140 of our new Civil Code; Supreme Court Rule 3.23; Federal Rules 52(b), 59(a) ). The contention takes too narrow a view of the spirit, if not the letter, of our new civil code (Laws 1943, pp. 353 et seq., Mo. R. S. A., §§ 847.1 et seq.) and our rules (352 Mo. appendix i) implementing said code, and the procedure and practice applicable to a suit in equity.

Section 114(c) of the code reads: "Upon motion of a party . . . the court may amend the judgment and opinion. The motion may be made with a motion for a new trial."

Section 115 reads, in part: ". . . On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact or make new findings, and direct the entry of a new judgment. . . ."

Our Rule 3.27 reads: "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." See Calloway v. Fogel (Mo.), 213 S. W. 2d 405, 410[7]; In re Duren, 355 Mo. 1222, 200 S. W. 2d 343, 345[2]; Caddell v. Gulf, M. & O. R. Co. (Mo. App.), 217 S. W. 2d 751, 757[9, 10].

Our new civil code and rules are designed to cover civil actions and suits, whether at law or equity, and to secure "just, speedy and inexpensive" determinations of controversies upon their merits. Code § 2. Consult §§ 57, 123, 139(a), 140(b), Rule 1.28. See Montgomery Ward & Co. v. Duncan, 311 U. S. 243, 250 et seq., 61 S. Ct. 189, 85 L. Ed. 147; Hormel v. Helvering, 312 U. S. 552, 557, 85 L. Ed. 1037, 61 S. Ct. 719.

█ This is an appeal in an equity proceeding. It is our duty to review and pass upon the evidence de novo and enter the judgment the chancellor should have rendered. Liflander v. Bobbitt (Mo.), 111 S. W. 2d 72, 75[3]; Fendler v. Roy, 331 Mo. 1083, 58 S. W. 2d 459, 465[8]; Conrath v. Houchin, 226 Mo. App. 261, 34 S. W. 2d 190, 191[6]; Binnion v. Clark (May 9, 1949), 359 Mo. 202, 221 S. W. 2d 214. The contention is overruled.

█ Defendants argue that since the property was subject to a deed of trust securing a $1,500 note, plaintiff would have received nothing until the bid exceeded $1,528.70, and that a bid of $1,528.70 would not constitute a fraud in equity as to plaintiff, citing Willis Lucas Lbr. Co. v. Neal, 222 Mo. App. 728, 4 S. W. 2d 1098, 1099[1]; Anderson v. Taylor (Mo.), 227 S. W. 84, 87[3]. No contention is presented that a lien for taxes is not superior to mortgages and other conventional liens. Consult Morey Eng. & Const. Co. v. St. Louis Artificial Ice Rink Co., 242 Mo. 241, 249-254, 146 S. W. 1142, 1143,

580

1144, 40 L. R. A. (N. S.) 119, Ann. Cas. 1913C, 1200. If the tax deed is upheld, the grantee takes free of the $1,500 mortgage and its ▮▮▮ existence should be no concern of his on the issue of a grossly inadequate consideration. Ordinarily, the owner is entitled to have his liability on the secured debt reduced by any surplus between a fraudulent and an adequate consideration for his property. If the value of the instant property be in the neighborhood of $2,500, then, under the authorities, the $28.70 bid is grossly inadequate. J. C. Nichols Inv. Co. v. Roorbach (Mo.), 162 S. W. 2d 274, ($40 for a lot worth $1,000); Johnson v. McAboy, 350 Mo. 1086, 169 S. W. 2d 932, 935[8], ($79.05 for land worth $1,000 to $2,000). See Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S. W. 2d 813; Daniel v. Mollett, 354 Mo. 50, 188 S. W. 2d 54. The point is disallowed.

▮▮ From the fact that the tax sale occurred December 15, 1937, and plaintiff acquired his title March 4, 1938, defendants say the fraud was committed on those who owned the property December 15, 1937, and plaintiff may not maintain his action for fraud, stressing DeTienne v. Peters, 354 Mo. 166, 188 S. W. 2d 954, 955, 956. See Ryan v. Miller, 236 Mo. 496, 139 S. W. 128, 133. Both DeTienne and plaintiff were strangers to the respective titles at the time of the inadequate consideration; but a sufficient distinction between the cases exists in that DeTienne purchased after the successful tax sale bidder had received his tax deed and the right of redemption had expired, whereas plaintiff acquired his deed prior both to the issuance of the tax deed and to the expiration of the right of redemption. In Wetmore v. Berger, 354 Mo. 158, 188 S. W. 2d 949, 953, the land brought $3.20 at a tax sale on November 16, 1938, and the tax deed was issued August 7, 1942, conveying the land to Wetmore. In the meantime Berger purchased the land for $1,000 on December 22, 1941, at a sale under a special tax bill. Wetmore sued to quiet his title on August 13, 1942. The court held the whole title to the land did not pass at the tax sale and that there remained in the owner the right of redemption, which right passed to Berger at the sale of December 22, 1941; that one having the right to redeem may do so at any time prior to the execution and delivery of the collector's deed under the Jones-Munger law, and that Berger, having acquired this right prior to the issuance of Wetmore's tax deed, "he should not be precluded from complaining of any fraud that would vitiate the collector's sale and deed." The instant record is to the effect Kansas City property owners may redeem at any time within five years of the beginning of the annual tax sale and, in addition, up to the delivery of the tax deed—September 8, 1944, in the instant case. Plaintiff's acquisition of title on March 4, 1938, brings him within the holding in Wetmore v. Berger. The distinction is fully recognized in DeTienne v. Peters.

■ ■ █ With respect to the equities between the instant plaintiff and the defendants under the exceptional facts of this record, we think there is merit in defendants' contention that plaintiff is not entitled to the return of the property, and that his cases bearing upon this issue are distinguishable on the facts, viz.: Wetmore v. Berger, supra; Voights v. Hart; 285 Mo. 102, 226. S. W. 248, 253, quoted with approval arguendo in Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S. W. 2d 813, 817, and McAboy v. Packer, 353 Mo. 1219, 187 S. W. 2d 207.

In Wetmore v. Berger, Berger paid a substantial sum for his title. The suit was filed within a week after delivery of the tax deed. There was no issue involving a third party or that the owner did anything to affect his equities, which observations apply to the Voights, Bussen Realty Company and McAboy v. Packer cases.

The holdings here invoked in the Voights and Bussen Realty Company cases are that a mere failure to redeem does not prevent an owner attacking a tax sale. In each case the defrauded owner was the complaining party and there was no delay in taking action.

McAboy v. Packer, supra, is to be read with Johnson v. McAboy, 350 Mo. 1086, 169 S. W. 2d 932, involving the same land and the same tax deed. In each the owners at the time of the tax sale, who continued in possession, sought to protect their title. █ They had made reasonable inquiry concerning the taxes and not until after delivery of the collector's tax deed were they told the land had been sold, the collector informing them the sale had not shown up on the books for a long time. Johnson, the tax-sale purchaser, sued to quiet title and oust the owners. The defendants cross-claimed to set aside the tax deed and to quiet their title upon doing equity. Judgment was for Johnson. The defendants' appeal was dismissed January 13, 1942, for failure to comply with our rules. April 29, 1942, the defendants sued out a writ of error, and in April, 1943, were successful, the tax deed was canceled and the title was decreed in defendants. One Packer had been a tenant of the owners, wanted to buy the land, and testified for Johnson in Johnson v. McAboy. He secured what amounted to a quitclaim deed (paying Johnson $1,000 therefor) to the property on January 15, 1942, that is, during the interim between the dismissal of defendants' appeal and the suing out of defendants' writ of error in Johnson v. McAboy. McAboy v. Packer also quieted the title in the owners at the time of the tax sale.

The instant plaintiff never inquired into the title. The tax sale was a matter of public record in the proper land tax book. For approximately eight-and-a-half years, he neither attempted to pay nor make any inquiry concerning the taxes. In August, 1940, he knew that, rightfully or wrongfully, his possession had been interfered with. Not until June, 1945, approximately five years later,

did he concern himself about the property. In the meantime World War II had caused a housing shortage and real estate values had greatly increased. Improvements made prior and subsequent to the delivery of the tax deed had enhanced the value of the property over that of December 15, 1937.

It has been considered that the gravamen of an action for fraud is injury to a plaintiff. 37 C. J. S. 297, § 44. Plaintiff paid his grantors no consideration for their deed, and his loss is slight and his equities not weighty. He collected approximately $650 in rents and retained $300 or more thereof. His testimony with respect to paying on the $1,500 note is not satisfactory. He is not the owner who was deprived of his property or one who paid an adequate consideration for it. He was not injured by the tax sale. He is asking a court of conscience to set aside the sale because the former owners were defrauded. He did not exhibit the interest to be expected of a property owner until approximately twenty-one months after the delivery of the tax deed, until after a third party, obligated to pay an adequate consideration therefor and making substantial payments on his contract of purchase and for improvements, acquired an interest in the property, and until its value had advanced. He treated the property as though it were not worth the charges against it. Uprooting sales on the ground of inadequacy of consideration is not one of the more favored exercises of equity jurisdiction. See Bussen Realty Co. v. Benson, 349 Mo. 58, 62, 159 S. W. 2d 813, 815; Lindsay v. City of St. Louis, 345 Mo. 1141, 1150, 139 S. W. 2d 906, 910; State ex rel. v. Innes, 137 Mo. App. 420, 425, 118 S. W. 1168, 1169. Consult Binnion v. Clark, supra.

The certificate of purchase was assigned to Frederick G. Boden on January 17, 1943, and he was in possession of the property when Mr. and Mrs. Wirt contracted to purchase on March 17, 1944. Boden acquired his tax deed September 8, 1944, and was then lawfully entitled to possession. The Wirts could place some reliance upon these facts in thereafter proceeding with their contract of purchase. See the reasoning in DeTienne v. Peters, supra; and Hobson v. Elmer, 349 Mo. 1131, 163 S. W. 2d 1020, 1024[8], disallowing redemption against an allegedly inadequate tax sale bid. Paxton v. Fix (Mo.), 190 S. W. 328, 330[3, 4], states: "We conclude that Swope was waiting for a rise in value before electing to redeem, or else he was asleep on his rights. In either case his estate is barred by laches." Ruckles v. Pryor, 351 Mo. 819, 174 S. W. 2d 185, 189[3, 4], reads: "'The doctrine of laches will prevent relief to one who has stood idly by with knowledge of his rights and allowed the situation to so change that it would be an injustice to others to grant the relief that was tardily sought.'" Klebba v. Struempf (Mo. App.), 23 S. W. 2d 205, 207. Goodrich Rubber Co. v. Bennett, 222 Mo. App. 510, 281 S. W. 75, 77[12], states: ". . . no man is entitled

to the aid of a court of equity when that aid becomes necessary through his own fault.'' We think the equities of the Wirts, aided by the failure of plaintiff to act with reasonable promptness in view of the exceptional facts of record, outweigh the equities of plaintiff.

The certificate of purchase assigned to Frederick G. Boden January 17, 1943, did not vest title or right of possession in him as of August, 1940, when, under the record, he took over control of the property. He acquired the right of possession when he received his tax deed on September 8, 1944. Consult State ex rel. v. Marburger, 353 Mo. 187, 182 S. W. 2d 163, 165[1, 2]; City of St. Louis v. Koch (Mo. App.), 156 S. W. 2d 1, 6[9]. The defendants Boden should not have interfered with plaintiff's possession in August, 1940. Giving consideration to the value of the property, between $2,000 and $2,750, its value as rental property, the fact that plaintiff's deed was subject to a $1,500 deed of trust and other factors, such as the payment of taxes by defendants Boden, their collection of rentals prior to September 8, 1944, et cetera, we think a judgment for plaintiff of damages in the sum of $1,500, with interest on $1,000 thereof from September 1, 1942, the approximate halfway point between August, 1940, and September 8, 1944, and interest on $500 thereof from April 13, 1948, the date of the decree below, is equitable.

We do not agree with defendants that plaintiff established no case against George Boden, the father. The evidence authorized findings that he participated in the transactions. Part of the time Frederick G. Boden was in the service in World War II.

The judgment is reversed and the cause is remanded with directions to enter a decree vesting the title in defendant Frederick G. Boden, subject to the rights of John T. Wirt and Velta M. Wirt under their contract of purchase, and that plaintiff have his judgment for damages against George Boden and Frederick G. Boden as hereinabove set out. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.